COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judge Clements and Senior Judge Coleman
Argued at Alexandria, Virginia


JOSHUA FRITTER

                                                        OPINION BY
v.       Record No. 0524-04-4                 JUDGE JEAN HARRISON CLEMENTS
                                                        MARCH 29, 2005
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
David T. Stitt, Judge

Dawn M. Butorac, Senior Assistant Public Defender (Office of the
Public Defender, on brief), for appellant.

Alice T. Armstrong, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


Joshua Fritter (appellant) was convicted in a jury trial of perjury, in violation of Code

§ 18.2-434. On appeal, he contends the evidence was insufficient to sustain his conviction

because (1) his allegedly perjurious statement was not material and (2) the Commonwealth did

not satisfy the "two witness" rule. Finding no error, we affirm appellant's conviction.

## I. BACKGROUND

"Under familiar principles of appellate review, we view the evidence and all reasonable

inferences fairly deducible from that evidence in the light most favorable to the Commonwealth,

the party that prevailed below." Banks v. Commonwealth, 41 Va. App. 539, 543, 586 S.E.2d

876, 877 (2003). So viewed, the evidence presented at trial established that, in February 2003,

Detective Steve Shillingford of the Fairfax County Police Department contacted appellant, who

was a suspect in a homicide investigation, and had several conversations with him. During one

conversation, appellant told Shillingford that he "had just received a letter from [Nick] Halteh," a

friend of his, who was also a suspect in the homicide investigation.  At the time, Halteh was

being held without bond pending trial on charges of robbery and malicious wounding.  Appellant

and Halteh had grown up together in the same neighborhood and were both members of the

"Yorkville Crew."  Appellant told Shillingford that "the letter indicated that [Halteh] wanted him

to either find the victim of the robbery and pay him off, or to find out where the person lived so

[Halteh] could take care of [him]."  In response to the detective's inquiry, appellant told

Shillingford that he did not have the envelope the letter came in.  Shillingford then went to

appellant's house and appellant gave him the letter.

The letter read:

Dear Josh,

What up nigga?  aint shit here just chillin, tryin to figure
out a way to clean this shit up.  I talked to my lawyer & he said I'm
gonna get my ass railroaded when I get to court, my only chance is
if dude don't show up – other than that I'm short, they won't give
me a bond, so there aint no way I can clean up my case.  Anyway
I'll give you a call.  tell everyone I said what up.  Nun, tom-tom,
Ahmad . . . everyone in Da' Yorkville Crew.  I don't wanna write
anything hott, But I need you & AHMAD & TOM-TOM'S Help!!
Nigga, I'm Faceing a rack of years.  & it's not in my Blood to do.
I'm gonna hit you up with someone's inmate # soon.  in the mean
time hollar At Jennifer, Mindy's Friend, get Dude's # from her, his
name is Andy (Not the M.S. Nigga Andy that used to chill with
Handia & Philly) its a Different Dude, Andy's older Bro is the one
Pressing charges.  I need you to touch BASE with him tell him I
can't Be in this junk man.  Ask him how much he want to Drop the
case, I have court 4-2-03 so get to work for me.  Nigga please, if he
aint going for it tell Jennifer to find out where he live & give me
the address so I can get this nigga Delt with somehow.  any way I
got to write Jesika so I'll hollar Back at you nigga

ONE
LOVE
Nick.

P.S.
Burn this letter when you finish reading it.  Oh yea I still
haven't put your name on the visit list But I put in a request form.

- 2 -

Detective Shillingford gave the letter to the detective who was working Halteh's case, who in turn gave it to Assistant Commonwealth's Attorney Jay Nanavati, the prosecuting attorney in Halteh's trial. Believing the letter "showed . . . Halteh's consciousness of guilt in the case," Nanavati planned to call appellant as a witness at Halteh's trial to authenticate the letter.

Nanavati and Shillingford met with appellant on August 11, 2003, the day before Halteh's trial on the charges of robbery, malicious wounding, and use of a firearm in the commission of a felony. In response to Nanavati's inquiry whether "he still planned on testifying the next day that he had indeed gotten that letter from Nick Halteh," appellant said he would not testify against Halteh, stating, "He's my friend. We grew up together. I'm not testifying against him."

Nanavati then issued a Commonwealth's Subpoena commanding appellant to testify at Halteh's trial. The next day, appellant was sworn in at Halteh's trial and testified that he had grown up with Halteh and knew him well. He further testified that he did not receive the letter addressed to "Josh" from "Nick" that Nanavati showed him and had "never seen it before." When told by Nanavati that he was under oath and subject to penalties for perjury, appellant stated, "I really don't care. Hold me in contempt of court. Do what you've got to do."

Nanavati was later able to authenticate the letter using circumstantial evidence, and the letter was admitted into evidence to show Halteh's consciousness of guilt. It was further adduced through stipulation, that appellant had given Detective Shillingford the letter. Halteh testified in his defense on cross-examination that he wrote the letter and sent it to appellant. Halteh explained on redirect examination that the letter was an expression of his belief that the witnesses against him were "trying to lock [him] up for something [he] didn't do." Halteh was subsequently acquitted of the charges against him.

On September 15, 2003, appellant was indicted for perjury in connection with his testimony at Halteh's trial. He was tried by a jury in January 2004. After hearing the evidence, the jury found appellant guilty of perjury and recommended a sentence of nine months in jail and a fine of $2,500. By final order entered February 18, 2004, the trial court imposed the recommended sentence, and this appeal followed.

## II. ANALYSIS

Appellant contends, on appeal, that the evidence was insufficient to sustain his conviction for perjury because the Commonwealth failed to (1) prove the materiality of the testimony in question and (2) satisfy the "two witness" rule. We disagree.

> "When considering the sufficiency of the evidence on appeal of a criminal conviction, we must view all the evidence in the light most favorable to the Commonwealth and accord to the evidence all reasonable inferences fairly deducible therefrom. The jury's verdict will not be disturbed on appeal unless it is plainly wrong or without evidence to support it."

Clark v. Commonwealth, 30 Va. App. 406, 409-10, 517 S.E.2d 260, 261 (1999) (quoting Traverso v. Commonwealth, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988) (citations omitted)). "'The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented.'" Donati v. Commonwealth, 37 Va. App. 575, 578-79, 560 S.E.2d 455, 456 (2002) (quoting Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995)).

### A. Materiality

Appellant argues the Commonwealth's evidence was insufficient to convict him of perjury because the allegedly perjurious statement he made at Halteh's trial was not material to a proper matter of inquiry in Halteh's trial.

Code § 18.2-434 provides that, "[i]f any person to whom an oath is lawfully administered on any occasion willfully swear falsely on such occasion *touching any material matter or*

*thing*, . . . he shall be guilty of perjury, punishable as a Class 5 felony." (Emphasis added.) Thus, "[i]n order to sustain a perjury conviction under this statute, the Commonwealth [has] the burden of proving: (1) that an oath was lawfully administered; (2) that the defendant wilfully swore falsely; and (3) that the facts to which he falsely swore were *material to a proper matter of inquiry*." Mendez v. Commonwealth, 220 Va. 97, 102, 255 S.E.2d 533, 535 (1979) (emphasis added).

"Testimony is material if it is relevant to a main or collateral issue on trial." Sheard v. Commonwealth, 12 Va. App. 227, 232, 403 S.E.2d 178, 180 (1991). "Evidence is relevant if it has any logical tendency, *however slight*, to establish a fact at issue in the case." Ragland v. Commonwealth, 16 Va. App. 913, 918, 434 S.E.2d 675, 678 (1993) (emphasis added).

The ultimate issue in Halteh's criminal trial was whether Halteh was the criminal actor. Any evidence that tended to prove or disprove Halteh's guilt was relevant and admissible unless determined to be unduly prejudicial. "Evidence that a defendant 'procured, or attempted to procure, the absence of a witness, or to bribe or suppress testimony against him, is admissible, as it tends to show the unrighteousness of the defendant's cause and a consciousness of guilt.'" Ragland, 16 Va. App. at 920, 434 S.E.2d at 679 (quoting McMillan v. Commonwealth, 188 Va. 429, 432-33, 50 S.E.2d 428, 430 (1948)). The contents of the letter from "Nick" to "Josh" demonstrated a desire by its author to effect the absence of a witness by some means available to the letter's recipient. Therefore, the letter was inculpatory because it tended to show a consciousness of guilt on the part of the one who wrote and sent it. Hence, evidence establishing the letter's authenticity and showing that Halteh authored the letter while awaiting his trial would be relevant at Halteh's trial to prove he was attempting to procure the absence of a witness who could testify as to his guilt.

Prior to Halteh's trial, appellant told Detective Shillingford he "had just received" the "Josh"-to-"Nick" letter from Halteh and gave the letter to the detective. At Halteh's trial, however, appellant testified under oath that he had "never seen [the letter] before." Thus, appellant's failure to testify in accordance with his prior account prevented the Commonwealth from using relevant evidence that tended to prove the authenticity of the letter.

Because appellant's prior account, if believed, would have authenticated the letter, we hold that appellant's testimony was material to a proper matter of inquiry in Halteh's trial. Specifically, appellant's testimony was relevant to prove that Halteh authored the incriminating letter and was, thus, material to prove Halteh's guilt. See Carfagno v. Commonwealth, 39 Va. App. 718, 726, 576 S.E.2d 765, 769 (2003). Accordingly, appellant's assertion and arguments to the contrary notwithstanding, appellant's testimony at Halteh's trial "touch[ed] [a] material matter or thing." Code § 18.2-434; see Ganzie v. Commonwealth, 24 Va. App. 422, 429-30, 482 S.E.2d 863, 867 (1997) (holding that, because the witness' statements were relevant to the issues under consideration at the time the statements were made, "the statements were material to the issues on trial").

### B. The "Two Witness" Rule

Appellant also argues the Commonwealth's evidence was insufficient to convict him of perjury because two witnesses did not prove the testimony he gave at Halteh's criminal trial was false, as required by law.

"While the Code has never expressly required corroboration to sustain a perjury conviction, from an early date, our courts have imposed a corroboration requirement." Keffer v. Commonwealth, 12 Va. App. 545, 547, 404 S.E.2d 745, 746 (1991). Indeed,

> "[n]o rule is perhaps better settled than that to authorize a
> conviction of perjury there must be two witnesses testifying to the
> falsity of the statement, or one witness with strong corroborating
> circumstances of such a character as clearly to turn the scale and

overcome the oath of the party and the legal presumption of his innocence."

Id. at 548, 404 S.E.2d at 746 (quoting Schwartz v. Commonwealth, 68 Va. (27 Gratt.) 1025, 1027 (1876)). "This rule is founded upon the idea that it is unsafe to convict in any case where the oath of one man merely is to be weighed against that of another." Schwartz, 68 Va. (27 Gratt.) at 1027.

Thus, "a perjury conviction under Code § 18.2-434 requires proof of falsity from the testimony of at least two witnesses *or* other corroborating evidence of falsity in the event the case is supported by the testimony of only one witness." Keffer, 12 Va. App. at 549, 404 S.E.2d at 747 (emphasis added); accord Stewart v. Commonwealth, 22 Va. App. 117, 120-22, 468 S.E.2d 126, 127-28 (1996). Compare Donati, 37 Va. App. at 578-79, 560 S.E.2d at 456-57 (holding that corroboration is unnecessary where the falsity of the testimony at issue is proven by "competent, authenticated, real evidence," such as a video recording, which "speaks for itself," therefore obviating the need for the fact finder to weigh "oath against oath").

> [A]lthough the corroborating evidence "must be of a strong character, and not merely corroborative in slight particulars," Schwartz, 68 Va. [(27 Gratt.)] at 1027, it need not be equal in weight to the testimony of a second witness. Rather, the corroborating evidence must confirm the single witness' testimony in a manner strong enough "'to turn the scale and overcome the oath of the [defendant] and the legal presumption of his innocence.'" Keffer, 12 Va. App. at 548, 404 S.E.2d at 746[] (quoting Schwartz, 68 Va. [(27 Gratt.)] at 1027).

Stewart, 22 Va. App. at 120, 468 S.E.2d at 127 (third alteration in original).

Here, when shown the letter from "Nick" to "Josh" at Halteh's trial and asked by the prosecutor if he had previously seen it, appellant testified under oath that he had "never seen it before." Conversely, Detective Shillingford testified under oath at appellant's trial that appellant had personally given him the letter and had described its contents to him. No other witness testified directly that appellant had seen the letter before. "Therefore, unless other evidence

- 7 -

corroborates [Shillingford's] testimony that [appellant] testified falsely about [not having previously seen the letter], appellant's perjury conviction must be set aside." Id.

Upon our review of the record, we hold that the Commonwealth presented sufficient corroborating evidence to overcome appellant's oath and the presumption of his innocence. First, the contents of the letter itself tend to corroborate Detective Shillingford's testimony. The letter is from "Nick," which is Halteh's first name, and is addressed to "Josh," which is appellant's first name. Additionally, the letter refers by name to acquaintances of both men whom appellant could contact. Second, and more importantly, Halteh's testimony corroborates Detective Shillingford's testimony that appellant perjured himself. Halteh testified at his own trial that he wrote appellant the letter. The jury could reasonably infer from this admission that appellant, the intended recipient, actually received Halteh's letter.

Taken together, this corroborating evidence ""turn[s] the scale"' in favor of [Detective Shillingford] and overcome[s] the force of [appellant's] oath." Stewart, 22 Va. App. at 121, 468 S.E.2d at 127 (quoting Keffer, 12 Va. App. at 548, 404 S.E.2d at 746 (quoting Schwartz, 68 Va. (27 Gratt.) at 1027)).

### C. Conclusion

Having found that appellant's perjured testimony was material to an issue properly before the court in Halteh's criminal trial and that the Commonwealth presented sufficient corroborating evidence at appellant's trial to satisfy the "two witness" rule, we hold that the evidence presented at trial in this case was sufficient to sustain appellant's perjury conviction. Accordingly, we affirm the judgment of the trial court and appellant's conviction.

Affirmed.