COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:   Judges Humphreys, Alston and Decker
Argued at Richmond, Virginia


PRINCE ADJEI

v.      Record No. 1380-13-2

COMMONWEALTH OF VIRGINIA

OPINION BY
MARLA GRAFF DECKER
SEPTEMBER 23, 2014


FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
Joseph J. Ellis, Judge

John A. Mell (Mell & Frost, PC, on brief), for appellant.

Eugene Murphy, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Prince Adjei appeals his convictions for perjury, in violation of Code § 18.2-434, and

possession of a firearm by an illegal alien, in violation of Code § 18.2-308.2:01(B).  The

appellant contends that the trial court erred by admitting the Commonwealth's document exhibits

into evidence and concluding that the evidence was sufficient to support his convictions.  We

hold that the documents were properly admitted into evidence.  Further, we hold that the

evidence was sufficient to support the convictions.  For these reasons, we affirm.

## I.  BACKGROUND

This case arises from the appellant filing a concealed handgun permit application with the

Spotsylvania County Circuit Court.  The Commonwealth ultimately charged the appellant with

perjury, alleging that he falsely answered "no" to the question on the application regarding

whether he was "an alien not lawfully admitted for permanent residence in the United States."

The Commonwealth also charged the appellant with possession of a firearm by an illegal alien.

Prior to trial, the Commonwealth made a motion to introduce into evidence copies of various documents from the appellant's alien file kept by the United States Citizen and Immigration Services (USCIS), an agency of the United States Department of Homeland Security (DHS).[1]  In support of the admission of the exhibits, the Commonwealth presented the testimony of Special Agent John Ferrick.  The agent was employed by Immigration and Customs Enforcement (ICE), also an agency of DHS.  Ferrick testified that during the course of investigating the appellant, he accessed DHS's file on him.  Ferrick explained that he accessed and relied on such files regularly in the course of his employment.  The agent further stated that he requested a certified copy of the file from the National Records Center.  The file was transferred to the agent's custody.  Ferrick noted that the file arrived with a certification bearing a DHS seal.  In court, Ferrick identified a certified copy of the appellant's "immigration alien file."

The appellant objected to the admission of the documents as hearsay.  He argued that the certification signature of Emma Davidson and the accompanying notation, "Washington District Office, office of authorized person," were insufficient to show that she was "the person to whom the custodian report[ed]."  The appellant also argued that the documents were not kept in the ordinary course of business because they were prepared in anticipation of litigation regarding his immigration status in the United States.  He further asserted that the documents contained some inadmissible statements of opinion.  Last, the appellant suggested that admitting the documents

---

[1] These documents consisted of the form the appellant completed when he entered the United States, a copy of the appellant's Ghanaian passport, a copy of his visa, his 2005 application for permanent residence and the accompanying petition for alien relative, the USCIS request for investigation, a benefit fraud referral, a fraud verification memorandum, the withdrawal of the 2005 petition for alien relative, the appellant's 2007 application for permanent status, the USCIS notice of decision denying the 2007 application, the appellant's 2012 application for permanent residence and accompanying petition for alien relative, a USCIS summary of findings, a USCIS site visit worksheet, and the USCIS decision denying the 2012 application.

would violate <u>Crawford v. Washington</u>, 541 U.S. 36 (2004), because it would deprive him of his constitutional right to confront his accusers.  After taking evidence and hearing argument at the pre-trial hearing, the trial court ruled that the documents were admissible.

At trial, Special Agent Ferrick testified that the appellant was a citizen of Ghana and not legally present in the United States.  He explained that the appellant first entered the country in October of 2003 with a travel visa that expired that same month.  Ferrick noted that the appellant's status in this country changed to "unlawful" the day after his visa expired.

Ferrick summarized the appellant's attempts to obtain legal resident status in this country. The appellant filed an application for residence in 2005 based on his purported marriage to an American citizen.  That application was denied after his American spouse withdrew her support for the application.  The appellant applied a second time for permanent residence in 2007, that time based on the diversity visa program.  USCIS denied that application because the appellant did not qualify for eligibility due to his illegal status in this country.  The appellant's 2012 application and third attempt for permanent residence was again based on marriage to an American citizen, who was a different person than in his original application.  The USCIS denied that application based on a finding of marriage fraud.  In addition to his testimony regarding the failed applications, Ferrick clarified that although the appellant had received authorization to work in the United States for one year, he never obtained legal permission to live here.[2]

During the course of his investigation, Ferrick learned that the appellant had received a concealed weapon permit through Spotsylvania County and obtained a copy of the permit application.  He was concerned about the application because the appellant represented on it that he was lawfully admitted for permanent residence in the United States, and Ferrick knew that the appellant was not a lawful permanent resident.

_____

[2] Ferrick was unclear as to the date of the appellant's employment authorization, saying only that 2005 "sound[ed] familiar."

- 3 -

As Ferrick testified, the Commonwealth introduced the related immigration documents into evidence. The court also admitted into evidence the "Certification of Documents" and two letters from USCIS verifying the contents of the file.

Special Agent Freddie Childs of the Virginia Department of State Police also testified at trial. Childs assisted Ferrick in investigating the appellant. During the course of the investigation, Childs went to the appellant's home. He told the appellant that he was investigating his concealed handgun permit. The agent asked the appellant where he had firearms located in the house. The appellant responded that he had a "nine millimeter" in his bedroom closet. At Childs' request, the appellant showed him the weapon and let the agent hold it.

During the interview that immediately followed, the appellant told Childs that although he did not have a green card, he was not an illegal alien because he had a work visa. Childs showed the appellant the concealed handgun permit application and asked him specifically about the immigration status question on the application. The appellant responded that the particular question confused him. When Childs asked why, the appellant answered, "I don't know." Childs then asked the appellant whether he was a lawful permanent resident of the United States, and he responded "no."

The trial court found the appellant guilty of perjury and possession of a firearm by an illegal alien. He was sentenced to twelve months in jail on each offense.

## II. ANALYSIS

The appellant assigns error to the trial court's admission of the documents from USCIS into evidence, based upon the rule against hearsay as well as the Confrontation Clause of the Constitution of the United States. He also argues that the evidence was insufficient to support his conviction for perjury because the Commonwealth did not prove that he had actual notice of

his illegal alien status at the time that he completed the concealed handgun permit application. Finally, the appellant maintains that the Commonwealth did not prove the elements of the firearm charge, noting that the firearm was not in evidence.[3]

### A. Admissibility of Challenged Documents

#### 1. Hearsay

The appellant contends that the trial court erred by admitting the documents from USCIS into evidence because they were not properly authenticated government records nor did they fall within the business records exception to the rule against hearsay. The appellant reasons that because the file did not sufficiently identify the signee of the "certification" as the custodian of the records or person to whom the custodian reported, the documents contained within the file were not properly authenticated. He also contends that Ferrick was not a custodian of the documents. Additionally, the appellant challenges four of the documents as inadmissible opinions.

"[T]he determination of the admissibility of relevant evidence is within the sound discretion of the trial court subject to the test of abuse of that discretion." Beck v. Commonwealth, 253 Va. 373, 384-85, 484 S.E.2d 898, 905 (1997); see also Henderson v. Commonwealth, 59 Va. App. 641, 649-50, 722 S.E.2d 275, 279 (2012). Further, "[t]he measure of the burden of proof with respect to factual questions underlying the admissibility of evidence

---

[3] The appellant contends in the argument section of his brief that the trial court erroneously altered one of the documents by shading the embossed seal on the "Certification of Documents" with a pencil to make it more readable. However, he did not include this argument in any of the assignments of error. "Only assignments of error assigned in the petition for appeal will be noticed by this Court." Rule 5A:12(c)(1)(i). Consequently, we do not reach this issue because it is beyond the scope of the assignments of error. See, e.g., Amin v. Cnty. of Henrico, 286 Va. 231, 234-35, 749 S.E.2d 169, 170 (2013); Simmons v. Commonwealth, 63 Va. App. 69, 75 n.4, 754 S.E.2d 545, 548 n.4 (2014).

is proof by a preponderance of the evidence." Witt v. Commonwealth, 215 Va. 670, 674, 212 S.E.2d 293, 296 (1975).

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 2:801(c). It can be "oral or written" evidence. See, e.g., Rule 2:801(a); see also Stevenson v. Commonwealth, 218 Va. 462, 465, 237 S.E.2d 779, 781 (1977). The value of hearsay relies "'upon the credibility of the out-of-court asserter.'" Stevenson, 218 Va. at 465, 237 S.E.2d at 781 (quoting Charles T. McCormick, McCormick's Handbook of the Law of Evidence § 246, at 584 (Edward W. Cleary ed., 2d ed. 1972)). Generally, if evidence is hearsay, "[it] is inadmissible unless it falls within one of the recognized exceptions to the hearsay rule." Robinson v. Commonwealth, 258 Va. 3, 6, 516 S.E.2d 475, 476 (1999); see also Rule 2:802.

As an initial matter, the appellant challenges four of the documents as opinion material inadmissible under the rule against hearsay. The documents pertain to the appellant's applications for permanent residence and the denials of those applications by USCIS. They reflect the agency investigations of the legitimacy of the appellant's two marriages to American citizens as well as the finding that the second marriage was fraudulent. The appellant suggests that these documents contain the "opinion" that he committed marriage fraud and, consequently, should not have been admitted into evidence.

The challenged documents were entered into evidence exclusively to prove the denial of the appellant's applications for permanent residence and the appellant's knowledge of his continuing status as an illegal alien. These limitations were made clear in the record. In response to the appellant's objection, the Commonwealth explained, "The only thing I want to get out of this whole stack of paper is the defendant is on actual notice that he is an illegal alien in Virginia, in the United States." The court, acknowledging such, commented with regard to the

evidence that "the only thing the Commonwealth is interested in is the denial which would have the effect of continuing status, illegal status" and "not how the federal government got to their decision." The appellant did not request that any portion of the documents be redacted.

In light of these facts, the record makes clear that any "opinions" or statements within the documents pertaining to marriage fraud were not admitted for the truth of the matter asserted. Therefore, to the extent the documents reflect the conclusion that the appellant committed marriage fraud, those statements did not constitute hearsay and their admission was not improper under the rule against hearsay. See generally Hodges v. Commonwealth, 272 Va. 418, 432, 634 S.E.2d 680, 687 (2006) (holding that a written statement was not hearsay because it was "not admitted for the truth of the matter asserted" and was therefore admissible).

Further, a trial judge, sitting as the fact finder in a bench trial, "'is uniquely suited by training, experience and judicial discipline to disregard potentially prejudicial comments.'" Lebron v. Commonwealth, 58 Va. App. 540, 551, 712 S.E.2d 15, 20 (2011) (quoting Cole v. Commonwealth, 16 Va. App. 113, 116, 428 S.E.2d 303, 305 (1993)). As a result, we presume that a trial judge has "'separate[d], during the mental process of adjudication, the admissible from the inadmissible, even though he has heard both.'" Id. (quoting Cole, 16 Va. App. at 116, 428 S.E.2d at 305); see also Eckhart v. Commonwealth, 222 Va. 213, 216, 279 S.E.2d 155, 157 (1981) (holding that no hearsay error occurred where the trial judge expressly did not consider potentially prejudicial testimony for the truth of the matter asserted). Based on these legal principles, we assume that during the appellant's bench trial, the court appropriately considered the evidence for its probative value relating to the elements of the charged offenses. Conversely, the trial court was not prejudiced by the evidence that the appellant committed marriage fraud nor did it consider that evidence for any other improper purpose. The appellant points to nothing in the record that would overcome these sound legal presumptions.

Turning to the portions of the documents that were admitted for the truth of the matter asserted, certain public records are admissible into evidence under the "official written documents exception" to the rule against hearsay. Williams v. Commonwealth, 35 Va. App. 545, 552, 546 S.E.2d 735, 739 (2001). Generally, these documents "are admissible as proof of the facts stated therein." Williams v. Commonwealth, 213 Va. 45, 46, 189 S.E.2d 378, 379 (1972). "The underlying rationale which justifies admitting facts contained in official records as an exception to the hearsay rule is that the concern for reliability is largely obviated because the nature and source of the evidence enhance the prospect of its trustworthiness." Ingram v. Commonwealth, 1 Va. App. 335, 338, 338 S.E.2d 657, 658-59 (1986). Under this exception, "[c]opies of records . . . of the United States . . . shall be received as prima facie evidence provided that such copies are authenticated to be true copies either by the custodian thereof or by the person to whom the custodian reports, if they are different." Code § 8.01-390(A); see also Rule 2:803(8). "A 'custodian' is 'one entrusted officially with guarding and keeping (. . . property, artifacts, [or] records).'" Williams, 35 Va. App. at 557, 546 S.E.2d at 741 (quoting Webster's Third New International Dictionary 559 (1993)).

In order to qualify under the exception for official written records, a document must be prepared by a public official and made in the course of that person's public duties. Taylor v. Maritime Overseas Corp., 224 Va. 562, 565, 299 S.E.2d 340, 341 (1983); Williams, 35 Va. App. at 552, 546 S.E.2d at 739. The exception "does not extend to statements not within the personal knowledge and observation of the recording official."[4] Smith v. Woodlawn Constr. Co., 235 Va. 424, 431, 368 S.E.2d 699, 704 (1988); see also Smoot v. Commonwealth, 18 Va. App. 562,

---

[4] The appellant does not argue that the statements in the challenged documents were not within the personal knowledge and observation of the recording officials. Consequently, our analysis does not address the personal knowledge requirement of the official records exception to the rule against hearsay.

565-66, 445 S.E.2d 688, 690 (1994) (construing the personal knowledge requirement). Similarly, the exception does not encompass statements of opinion.  See Bond v. Commonwealth, 226 Va. 534, 537, 311 S.E.2d 769, 771 (1984).

In our analysis of whether Emma Davidson was a custodian or person to whom the custodian reported, we look to the specific facts of the case, the relevant laws, and the pertinent federal regulations.  Davidson signed the "Certification of Documents" accompanying the appellant's alien file.  The certification form contains an embossed "U.S. Department of Homeland Security" seal and the heading "United States of America Department of Homeland Security U.S. Citizenship and Immigration Services."  Davidson signed her name as an "Authorized Person" from the Washington District Office.  The certification form further provides that "[b]y virtue of the authority vested in me by Title 8, Code of Federal Regulations, Part 103 of the Immigration and Nationality Act, and Title IV, Subtitle E, Sec. 451 and Sec. 456 of the Homeland Security Act of 2002," the documents were certified from the records of USCIS.  Additionally, Davidson enclosed a cover letter addressed to Agent Ferrick on USCIS letterhead from the Office of the District Director, Washington District.  Davidson listed her job title as "Immigration Services Analyst" and indicated that she worked in the Records Division. That letter provides that Davidson had attached certified copies of the documents related to the appellant.  A second letter included with the file, also on USCIS letterhead, states, "Pursuant to Title 6 of the Code of Federal Regulations, section 5.41(a)(2), we are providing this certified copy of our records to you."  Kimberly Zanotti signed this letter, listing her title as the "Washington Field Office Director."

The Homeland Security Act of 2002 abolished the Immigration and Naturalization Service and vested DHS with the duties of administering and enforcing immigration laws. Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002).  Three agencies

under the umbrella of DHS are responsible for executing federal immigration policy: Customs and Border Protection, ICE, and USCIS. 6 U.S.C. §§ 211, 252, 271. USCIS is tasked with adjudicating immigrant visa petitions. Aliens and Nationality, 8 C.F.R. §§ 204.1-204.6. The Director of USCIS, or his or her designee, is the custodian of the agency's records by regulation. See 8 C.F.R. § 103.7(f) ("The Director of USCIS, or such other officials as he or she may designate, may certify records when authorized under [the Freedom of Information Act] or any other law to provide such records.").

We hold that the specific facts of this case, viewed in light of the law and regulatory scheme, provided a sufficient basis for the trial court to conclude that Davidson, the signee of the certification, was a custodian of the appellant's alien file. Consequently, the court did not abuse its discretion in admitting the documents into evidence under the official written records exception to the rule against hearsay. [5]

The certification in this case is similar to that in Williams, 35 Va. App. 545, 546 S.E.2d 735, in which this Court considered whether a certificate of analysis met the official records exception to the rule against hearsay. The certificate in Williams was accompanied by a cover letter on Division of Forensic Science letterhead signed by "K. C. Hux, Custodian of Records, Tidewater Laboratory," and "Robert J. Campbell, Director, Tidewater Laboratory." Id. at 549, 546 S.E.2d at 737. This Court held that the evidence provided a sufficient basis for the trial court to conclude that Hux was a custodian of the records. Id. at 557, 546 S.E.2d at 741. In contrast, in Taylor, 224 Va. at 565-66, 299 S.E.2d at 342, the Supreme Court of Virginia held

---

[5] The trial court ruled that the documents were "admissible on a number of different grounds." In light of our conclusion that the challenged documents met the official records exception, we do not address the Commonwealth's argument that the documents also qualified for admission under the business records exception. See Luginbyhl v. Commonwealth, 48 Va. App. 58, 64, 628 S.E.2d 74, 77 (2006) (*en banc*) (holding that as an appellate court, we should "decide[] cases 'on the best and narrowest ground available'" (quoting Air Courier Conf. v. Am. Postal Workers Union, 498 U.S. 517, 531 (1991) (Stevens, J., concurring))).

that the purported Coast Guard inspection report was not properly authenticated as an official record under Code § 8.01-390. Neither the signature of the Coast Guard lieutenant who signed the "true copy" certification nor the "transmittal letter" signed by a Coast Guard captain showed that either officer was the custodian or a person to whom the custodian reported. Id.

Contrary to the appellant's argument, the law does not require the use of the specific words "custodian" or "person to whom the custodian reports" in order for a certification to meet the requirements of the official records exception. Rather, the cases illustrate the need for the proponent of the evidence to provide the trial court with a basis to find that the person who authenticated the challenged document was the custodian or someone to whom the custodian reported in terms of their actual responsibilities and not merely his or her job title. In this case, consistent with the logic in Williams, 35 Va. App. 545, 546 S.E.2d 735, the Commonwealth met that burden by presenting sufficient proof for the trial court to conclude that Davidson was a custodian of the USCIS file on the appellant based upon the certification and letters accompanying the file. Consequently, the evidence was properly admitted.

### 2. Confrontation Clause

The appellant further contends that the admission of three of the documents violated his right to confront witnesses against him as guaranteed by the Sixth Amendment to the Constitution of the United States. Specifically, he challenges the request for investigation, the benefit fraud referral, and the notice of decision documents as testimonial statements under Crawford v. Washington, 541 U.S. 36 (2004). The Commonwealth responds that the trial court did not err by admitting the challenged records into evidence because they were not created in anticipation of criminal prosecution and, consequently, their admission did not violate the appellant's right to confront witnesses.

The Sixth Amendment provides a criminal defendant the right to confront the witnesses "'who bear testimony' against him." Melendez-Diaz v. Massachusetts, 557 U.S. 305, 309 (2009) (quoting Crawford, 541 U.S. at 51); see also Sanders v. Commonwealth, 282 Va. 154, 162, 711 S.E.2d 213, 217 (2011). A witness' out-of-court testimonial statement against the defendant is inadmissible unless the witness is unavailable and the defendant had a prior opportunity for cross-examination. Melendez-Diaz, 557 U.S. at 309; Dickens v. Commonwealth, 52 Va. App. 412, 418, 663 S.E.2d 548, 551 (2008).

To determine whether a statement is testimonial, "we objectively evaluate the circumstances in which the encounter occur[ed] and the statements and actions of the parties." Michigan v. Bryant, 131 S. Ct. 1143, 1156 (2011). In doing so, this Court "look[s] to all of the relevant circumstances." Id. at 1162; see also Sanders, 282 Va. at 167, 711 S.E.2d at 219. "Although we will not disturb on appeal decisions regarding the admissibility of evidence absent an abuse of the trial court's discretion, we review *de novo* whether a particular category of proffered evidence is 'testimonial hearsay.'" Caison v. Commonwealth, 52 Va. App. 423, 434, 663 S.E.2d 553, 559 (2008) (citation omitted).

Testimonial statements are the "sort [that] cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." Davis v. Washington, 547 U.S. 813, 821 (2006). The Supreme Court of the United States explained that, in the context of a police interrogation, statements "are testimonial when the circumstances objectively indicate that there is no . . . ongoing emergency[] and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." Id. at 822. Applying the Crawford line of cases from the United States Supreme Court, the Supreme Court of Virginia has held that a statement is testimonial if its primary purpose is "for use in an investigation or

prosecution of a crime." See Sanders, 282 Va. at 164, 711 S.E.2d at 218 (holding that a laboratory report was non-testimonial because it was "created for medical treatment purposes").

Federal courts considering the testimonial nature of immigration or alien-related documents similar to those at issue here likewise have focused their analysis on whether the documents' primary purpose was for use at a trial. "[D]ocuments prepared by immigration officers on immigration forms can be testimonial if created for use at a later criminal trial." United States v. Duron-Caldera, 737 F.3d 988, 994 (5th Cir. 2013). However, although the possibility that the contents of a document may be used later at a criminal trial is a circumstance to be considered, it does not prove that the document was prepared with the *primary purpose* of establishing facts relevant to a criminal prosecution. See, e.g., United States v. Rojas-Pedroza, 716 F.3d 1253, 1268-69 (9th Cir. 2013) (holding that statements in a warrant of removal and notice of intent were non-testimonial); United States v. Lang, 672 F.3d 17, 22 (1st Cir. 2012) (holding that a naturalization application form was a "non-testimonial public record produced as a matter of administrative routine, for the primary purpose of determining eligibility for naturalization"); United States v. Caraballo, 595 F.3d 1214, 1229 (11th Cir. 2010) (holding that the primary purpose of an alien's I-213 form was to track that person's entrance into the country and, therefore, its admission into evidence did not violate the defendant's constitutional right to confront witnesses); United States v. Garcia, 452 F.3d 36, 42 (1st Cir. 2006) (holding that the admission of a warrant of deportation did not violate the defendant's right to confront witnesses).

In the instant case, the appellant argues that the request for investigation, benefit fraud referral, and notice of decision were testimonial. The request for investigation contains the USCIS recommendation that ICE investigate the appellant's possible marriage fraud. The form notes that a public record indicated that the appellant and his petitioning spouse lived in different states. The benefit fraud referral reflects ICE's conclusion that the marriage "appear[ed]

- 13 -

questionable" and the recommendation that the case be handled administratively. The notice of decision was prepared to notify the appellant of USCIS's denial of his application for permanent residence.

"The Alien File (A-File), Index, and National File Tracking System of Records is the official record system that contains information regarding transactions involving an individual as he/she passes through the U.S. immigration and inspection process." Privacy Act of 1974; Citizenship and Immigration Services, Immigration and Customs Enforcement, Customs and Border Protection--001 Alien File, Index, and National File Tracking System of Records, 76 Fed. Reg. 34233, 34234 (June 13, 2011). USCIS is charged with "administer[ing] and enforc[ing] certain provisions" of federal immigration laws. 8 C.F.R. § 100.1. This federal agency "has jurisdiction to adjudicate an application for adjustment of status filed by any alien." Id. § 245.2(a)(1). Evidence of any attempt or conspiracy to enter into a marriage in order to evade immigration laws must be kept in the alien's file. Id. § 204.2(a)(1)(ii). Further, retaining such information is important to the agency's functions because it cannot approve a visa petition "on behalf of an alien who has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws." Id.

The record and applicable law demonstrate that preparing and maintaining records of alien applications for permanent residence and the agency's disposition of each application are necessary to the USCIS's administrative and adjudicatory functions. Thus, the objective circumstances in this case supported the finding that the challenged documents were prepared for administrative purposes, not for use in an investigation or prosecution of a crime. As a result, we hold that the documents were not testimonial under the relevant legal standard. See Melendez-Diaz, 557 U.S. at 324 ("Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—

- 14 -

having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial."); Walker v. Commonwealth, 281 Va. 227, 231, 704 S.E.2d 124, 126 (2011) (holding that the "blue book" value of used cars was not testimonial because it was not prepared "for the purpose of assisting the Commonwealth in securing [Walker's] conviction"); Boone v. Commonwealth, 63 Va. App. 383, 391, 758 S.E.2d 72, 76 (2014) (holding that a Department of Motor Vehicles transcript was not testimonial). Consequently, the admission of the documents did not violate the appellant's constitutional right to confront witnesses against him, and the trial court did not err by admitting them into evidence.

### B. Sufficiency of the Evidence

The appellant challenges the sufficiency of the evidence to support his convictions. When considering a challenge to the sufficiency of the evidence, we must affirm the decision unless the trial court's decision was plainly wrong or lacked evidence to support it. See, e.g., Jordan v. Commwealth, 286 Va. 153, 156, 747 S.E.2d 799, 800 (2013); Fritter v. Commonwealth, 45 Va. App. 345, 351, 610 S.E.2d 887, 890 (2005). Further, on appeal of a criminal conviction, this Court "'view[s] all the evidence in the light most favorable to the Commonwealth,'" as the prevailing party below. Fritter, 45 Va. App. at 351, 610 S.E.2d at 890 (quoting Clark v. Commonwealth, 30 Va. App. 406, 409-10, 517 S.E.2d 260, 261 (1999)). To do so, we "'discard all evidence of the accused that conflicts with that of the Commonwealth and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences reasonably deducible therefrom.'" Henry v. Commonwealth, 63 Va. App. 30, 37, 753 S.E.2d 868, 871 (2014) (quoting Holcomb v. Commonwealth, 58 Va. App. 339, 346, 709 S.E.2d 711, 714 (2011)); see also Jordan, 286 Va. at 156, 747 S.E.2d at 800.

## 1. Perjury

The appellant argues that the evidence was insufficient to support his perjury conviction because the Commonwealth failed to prove that he had notice of his status as an illegal alien when he completed the concealed handgun permit application in 2007. The appellant also asserts that the Commonwealth failed to provide corroborating evidence against him. Upon our review of the record and applicable law, however, we conclude that the evidence supports the conviction.

The appellant completed a concealed handgun permit application on January 4, 2007. On that application, he answered "no" to the question of whether he was "an alien not lawfully admitted for permanent residence in the United States." Code § 18.2-434 provides, in pertinent part: "[I]f any person in any written declaration, certificate, verification, or statement under penalty of perjury . . . willfully subscribes as true any material matter which he does not believe is true, he is guilty of perjury . . . ." The statute requires that in order to be guilty of perjury, one must believe that a statement is false at the time he makes it. See id.; see also Rothfuss v. Commonwealth, 198 Va. 461, 466, 94 S.E.2d 532, 535 (1956) (holding that to prove perjury, the Commonwealth must prove "not only that the statements the accused made under oath were false, but were known by him to be false at the time").[6]

In our review of the record, we accord the trial court's decisions on factual determinations "great deference." See, e.g., Towler v. Commonwealth, 59 Va. App. 284, 297, 718 S.E.2d 463, 469 (2011). The trial court relied upon the timeline of the evidence in making the factual finding that the appellant knew of his illegal alien status in this country when he

---

[6] The Supreme Court decided Rothfuss under former Code § 18-237 (1956), which provided, in pertinent part, "If any person to whom an oath is lawfully administered on any occasion wilfully swear[s] falsely on such occasion touching any material matter or thing . . . [,] he shall be guilty of perjury."

completed the permit application. In reaching this conclusion, the court explained, "certainly, in 2012, you knew what your status was, but what's more important is you knew in 2006, because that predates your request for a concealed weapons permit, dated January the 4th, 2007."

Following the expiration of his visa in 2003, the appellant made multiple efforts to obtain lawful status. He applied to register as a permanent resident in 2005. USCIS denied the application in June of 2006. The appellant again applied to register as a permanent resident in July of 2007, and then a third time in 2012. Each was denied. The concealed handgun permit application was submitted six months after the USCIS's denial of his 2005 application to register as a permanent resident and five months before his second such application in 2007. Viewing the evidence in the light most favorable to the Commonwealth, the record supports the reasonable inferences that the appellant's 2007 application for permanent residence was proof of his knowledge of his continuing status as an illegal alien and, thus, that he was not a lawful resident. Further, the record supports the trial court's factual finding that the appellant knew of his status as an illegal alien at the time that he completed the permit application. Thus, that finding was not plainly wrong and the conviction was supported by the evidence.

The appellant additionally argues that the Commonwealth did not provide corroborating evidence sufficient to support his perjury conviction. Rule 5A:18 provides that this Court will review a ruling of the lower court only if "an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." The rule requires that "a specific argument must be made to the trial court at the appropriate time, or the allegation of error will not be considered on appeal." Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (*en banc*), aff'd by unpub'd order, No. 040019 (Va. Oct. 15, 2004). In this case, the appellant did not argue at trial that the Commonwealth failed to present corroborating evidence necessary to support his perjury

conviction.[7]  Further, the appellant does not now argue that the ends of justice exception should apply, and we may not address that very limited exception *sua sponte*.  See id. at 761, 589 S.E.2d at 448; see also Sutphin v. Commonwealth, 61 Va. App. 315, 321-22, 734 S.E.2d 725, 729 (2012) (discussing Rule 5A:18 in the perjury context).  Consequently, we hold that Rule 5A:18 bars us from considering the appellant's argument that further corroboration was required.  See Copeland v. Commonwealth, 42 Va. App. 424, 440-42, 592 S.E2d 391, 399 (2004) (holding that 5A:18 barred the defendant's sufficiency argument on an element of the offense when he failed to challenge that element at trial).

We hold that the evidence, viewed in the light most favorable to the Commonwealth, supports the trial court's factual finding that the appellant knew that he was not a lawful resident in this country when he represented that he was one on the permit application.[8]  Consequently, the evidence was sufficient to prove perjury, and we affirm the conviction.

---

[7] A conviction for perjury typically "'requires proof of falsity from the testimony of at least two witnesses or other corroborating evidence of falsity in the event the case is supported by the testimony of only one witness.'"  Stewart v. Commonwealth, 22 Va. App. 117, 120, 468 S.E.2d 126, 127 (1996) (quoting Keffer v. Commonwealth, 12 Va. App. 545, 549, 404 S.E.2d 745, 747 (1991)).  The corroborating evidence rule originates from perjury cases based upon the *conflicting* testimony of two witnesses.  Stewart, 22 Va. App. at 120, 468 S.E.2d at 127.  The purpose of the rule is to provide corroborating evidence of the testimony of the Commonwealth's witness.  Id.  The rule does not apply in a case that "does not involve the weighing of competing oaths and is not supported by the testimony of only one witness."  Donati v. Commonwealth, 37 Va. App. 575, 578, 560 S.E.2d 455, 456 (2002) (holding that no evidence was required to corroborate the video recording that contradicted the defendant's oath).

[8] To the extent that the appellant argued that the Commonwealth did not exclude the hypothesis of innocence that he did not know of his illegal alien status when he completed the permit application, for the reasons explained here, this was not a "'reasonable hypothes[is] of innocence that flow[s] from the evidence.'"  See Archer v. Commonwealth, 26 Va. App. 1, 13, 492 S.E.2d 826, 832 (1997) (quoting Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993)).  There is no evidence in the record that expressly or implicitly established that appellant was unaware of his immigration status.

## 2. Possession of a Firearm

The appellant argues that the evidence was insufficient to support his conviction for possession of a firearm by an illegal alien. He specifically contends that the evidence did not prove that the item that he possessed was operable, or had the ability to expel a projectile by the power of an explosion. The appellant also relies upon the fact that the actual firearm was not produced at trial and argues that no evidence corroborated his description of the item as a "nine millimeter."[9]

Code § 18.2-308.2:01(B) prohibits "any person who is not a citizen of the United States and who is not lawfully present in the United States, [from] knowingly and intentionally possess[ing] or transport[ing] any firearm." This Court has not previously construed the meaning of "firearm" as used in this statute. "Accordingly, we . . . look to the related statutes . . . in order to give consistent meaning to the language used by the General Assembly." Armstrong v. Commonwealth, 263 Va. 573, 583, 562 S.E.2d 139, 145 (2002).

The Supreme Court of Virginia has interpreted the meaning of "firearm" as used in Code § 18.2-308.2, the statute prohibiting possession of "any firearm" by a convicted felon. Id. The Supreme Court explained that "the conduct proscribed in Code § 18.2-308.2 . . . focuses on the General Assembly's determination that certain individuals—felons—are unfit to possess firearms, even for lawful purposes." Id. at 582, 562 S.E.2d at 144. Consequently, the Court reasoned that the offense did not include any "element of perception by a victim" warranting the same construction of the term "firearm" as applicable to the term in the context of Code § 18.2-53.1, which forbids the use of a firearm in the commission of a felony. Id. at 583, 562 S.E.2d at 144. Therefore, the Supreme Court concluded that the prohibition in Code

---

[9] The Commonwealth's attorney correctly acknowledged that he "made a mistake" by not admitting the weapon into evidence. The question for this Court is whether that mistake was fatal to the possession charge.

§ 18.2-308.2 against "firearms" encompasses any "instrument which was designed, made, and intended to fire or expel a projectile by means of an explosion." Id. at 584, 562 S.E.2d at 145; see also Jordan, 286 Va. at 158, 747 S.E.2d at 801 (applying the Armstrong interpretation of "firearm"). It specifically noted, however, that the Commonwealth was not required to prove that the weapon was operable. Armstrong, 263 Va. at 583, 562 S.E.2d at 145; see also Jordan, 286 Va. at 157, 747 S.E.2d at 801; see also Startin v. Commonwealth, 281 Va. 374, 382, 706 S.E.2d 873, 878 (2011) (explaining that although the definition of "firearm" under Code § 18.2-308.2 "is more narrowly construed" than under Code § 18.2-53.1, "it is not necessary that the instrument is 'operable'").

We hold, based upon the rationale in Armstrong, that the definition of "firearm" is the same under both statutes, because both reflect the "General Assembly's determination that certain individuals . . . are unfit to possess firearms." 263 Va. at 581-84, 562 S.E.2d at 144-45. Thus, in this case, proof of operability was not required to establish that the weapon was a "firearm" within the purview of Code § 18.2-308.2:01(B).

The testimony of Special Agent Childs provided the evidence regarding the firearm. Childs went to the appellant's residence and explained that he was investigating the appellant's concealed handgun permit application. The agent asked the appellant where his firearms were located inside the house. In response, the appellant admitted "that he had a nine millimeter in his bedroom closet." The appellant then led Childs upstairs to the closet in his master bedroom. Agent Childs explained that "inside that closet there was a wooden box and then behind that box was the weapon." Childs further testified, "I just held it in my hand and I asked him if he wanted to step downstairs to his kitchen table." Additionally, during the encounter, the appellant told the agent that he sometimes carried a .38 revolver for his employment as a security guard at the Federal Deposit Insurance Corporation.

The facts at issue in <u>Jordan</u> are instructive here. In that case, the victim testified that the defendant pointed a "Raven" at him. The Supreme Court held that the victim's description "indicate[d] a specific weapon that was designed, made, and intended to fire or expel a projectile by means of an explosion." 286 Va. at 158, 747 S.E.2d at 801. The Court found that the description combined with the defendant's implied threat to shoot the victim provided a sufficient basis for the jury to conclude that the item in question was a firearm. <u>Id.</u> at 158-59, 747 S.E.2d at 801.

The facts in the instant case are more compelling than those in <u>Jordan</u>, which involved "only the uncorroborated description of an unknown object made by a young boy after viewing the object for mere seconds." <u>Id.</u> at 162, 747 S.E.2d at 803 (Powell, J., dissenting); <u>see also</u> <u>Redd v. Commonwealth</u>, 29 Va. App. 256, 511 S.E.2d 436 (1999) (holding that the evidence supported the firearm conviction based upon the clerk's description of "a long black gun" and the implied assertion that the weapon was a functioning firearm). The description in this case, by contrast, was provided by the owner of the weapon, who was knowledgeable about firearms generally from his employment as a security guard and, specifically, about the particular "nine millimeter" that he kept hidden in his bedroom closet. The fact that the appellant kept the gun in a place safe from accidental discharge, theft, or misuse further supported the conclusion that it was a firearm designed to expel a projectile. Additionally, the appellant produced the handgun for Childs when explicitly asked about firearms in the house as part of the investigation regarding his concealed handgun permit. Finally, and significantly, Childs, a trained law enforcement special agent, testified that the appellant showed him "the weapon" and that Childs "held it in [his] hand." This testimony provided a sufficient basis to conclude that Childs too believed the item was a nine millimeter handgun. The trial court's conclusion that the item was a firearm as contemplated in Code § 18.2-308.2:01(B) is supported by the evidence.

The appellant also argues that the evidence was insufficient because the firearm conviction was based solely on his statement. See, e.g., Hamm v. Commonwealth, 16 Va. App. 150, 157, 428 S.E.2d 517, 522 (1993) ("A conviction cannot be based solely on the uncorroborated statement of a person that a crime has occurred and that he committed it."). However, the testimony provided by Childs, including that he held the weapon, corroborated the appellant's description of the item as a "nine millimeter" firearm. See id. (holding that where a defendant has confessed fully to the crime, "'only *slight* corroborative evidence is necessary'" (quoting Jefferson v. Commonwealth, 6 Va. App. 421, 424, 369 S.E.2d 212, 214 (1988))).

We hold that the evidence was sufficient to prove that the item possessed by the appellant was an "instrument which was designed, made, and intended to fire or expel a projectile by means of an explosion." Accordingly, we affirm the conviction for possession of a firearm as prohibited by Code § 18.2-308.2:01(B).

## III. CONCLUSION

The trial court did not abuse its discretion in admitting the documents into evidence under the official records exception to the rule against hearsay. Further, the admission of the documents into evidence did not violate the appellant's constitutional right to confront witnesses against him. Finally, the evidence, viewed under the appropriate standard of review, supports the appellant's convictions for perjury and possession of a firearm in violation of Code § 18.2-308.2:01(B). Consequently, we affirm the convictions.

Affirmed.