COURT OF APPEALS OF VIRGINIA

Present: Judges Causey, Raphael and Senior Judge Clements

JUSTIN GLENN CARTER

v.     Record No. 1969-22-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
OCTOBER 17, 2023

FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
Ricardo Rigual,[1] Judge

(Lauren Brice, Assistant Public Defender; Virginia Indigent Defense
Commission, on briefs), for appellant.

(Jason S. Miyares, Attorney General; Collin C. Crookenden,
Assistant Attorney General, on brief), for appellee.


Following a jury trial, the Spotsylvania County Circuit Court convicted Justin Carter of

making a false statement on a firearms transaction record, in violation of Code § 18.2-308.2:2. On

appeal, Carter asserts that the evidence was insufficient to support his conviction. After examining

the briefs and record in this case, the panel unanimously holds that oral argument is unnecessary

because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a). We affirm

the trial court.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] The Honorable Craig Johnston, Judge Designate, presided over the November 10, 2022
sentencing hearing and imposed sentence. The Honorable Ricardo Rigual entered the final
sentencing order.

BACKGROUND

"Under well-settled principles of appellate review, we consider the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below." *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008).

On July 8, 2020, Carter entered the B&B Pawn Shop (B&B Pawn) to purchase a Hi-point 9mm handgun. Anthony Ball, the owner of B&B Pawn, assisted Carter with the purchase. Ball had owned and operated B&B Pawn for about 26 years and was in the pawn industry for over 30 years. Because firearm sales featured prominently in the pawn business, Ball typically processed between 3 and 13 firearm transactions per day. During each transaction, Ball followed the same general procedure.[2] Virginia residents were given a state form (SP65) and a federal form (Form 4473) to fill out. Each form had a section of questions for the customer to answer regarding his or her eligibility to purchase a firearm and a section for the seller to complete with verification and approval information. Customers were instructed that every answer had to be printed as clearly as possible, and if there was any issue with the way any one of the questions was answered, Ball would ask clarifying questions because "some people don't read the questions properly." Once Carter completed the forms, Ball sought approval from the state police for the sale.

Form 4473 contained a warning on the first page stating:

> You may not receive a firearm if prohibited by Federal or State law. The information you provide will be used to determine whether you are prohibited from receiving a firearm. Certain violations of the Gun Control Act, 18 U.S.C. 921 et. seq., are punishable by up to 10 years imprisonment and/or up to a $250,000 fine.

Question 11.i on Form 4473 inquired if the applicant had "ever been **convicted** in any court of a misdemeanor crime of domestic violence?" Ball testified that if a customer answered "yes" to that

---

[2] Ball had no independent recollection of Carter's July 8 transaction, but at trial, he recognized Carter as someone who regularly did business with B&B Pawn.

question, he would inform the customer that "the sale can't go through" and then ask the customer if he was "sure that [he] was convicted," because sometimes the customer had information suggesting that the "answer is technically supposed to be no." Ball reminded his customers that they might be subject to prosecution if the forms were filled out incorrectly. The customer would not be given a new form to fill out if he mistakenly checked the wrong answer. Rather, Ball would instruct him to initial the change on the form, put a date next to his initials, and "rewrite [his] answer next to the new box." Carter's Form 4473 showed that he checked both the "Yes" and "No" boxes for question 11.i, but he scratched through the "Yes" box, added his initials and the date 7/8 on the form, and then re-wrote his answer as "no." Carter signed and dated Form 4473, which included the following certification:

> I certify that my answers in Section A are *true, correct, and complete. I have read and understand the Notices, Instructions, and Definitions* on ATF Form 4473. . . . *I understand that a person who answers "yes" to any of the questions 11.b. through 11.i and/or 12.b. through 12.c. is prohibited from purchasing or receiving a firearm.* . . . I also understand that *making any false oral or written statement*, or exhibiting any false or misrepresented identification *with respect to this transaction, is a crime* punishable as a felony under Federal law, and may also violate State and/or local law. I further understand that the repetitive purchase of firearms for the purpose of resale for livelihood and profit without a Federal firearms license is a violation of Federal law.

(Emphases added). Because Carter had two domestic assault convictions on his criminal record, the state police denied his application for the gun purchase.

Virginia State Police Senior Trooper Robert Aldrich was tasked with investigating the denial of Carter's application. Trooper Aldrich met with Carter to discuss the matter on May 29, 2021. Their conversation was recorded and later played for the jury at trial. During the interview, Carter admitted that he had two prior convictions for domestic assault and battery, but explained that he did not know those convictions would prevent him from purchasing a firearm at B&B Pawn on July 8, 2020. Carter told Trooper Aldrich that he thought the only disqualifier for purchasing a

firearm was if he had a felony on his record. He learned that his domestic assault convictions were a disqualifier by speaking with his wife after his application for the firearm was denied. He further stated that he did not remember writing "No" on Form 4473 and explained that he could have overlooked or misread the question, causing him to answer incorrectly. Carter admitted that he read the forms before signing them and said he understood the terms.

The jury convicted Carter of making a false statement on the firearms transaction record. Carter noted this appeal.

ANALYSIS

Carter asserts that the evidence was insufficient to support his conviction because it failed to prove he acted "willfully and intentionally" when he answered "no" to question 11.i on Form 4473. We disagree.

"This Court applies a well-established standard when reviewing the sufficiency of the evidence to support a criminal conviction." *Parham v. Commonwealth*, 64 Va. App. 560, 565 (2015). We examine "the evidence in the light most favorable to the Commonwealth." *Fritter v. Commonwealth*, 45 Va. App. 345, 351 (2005) (quoting *Clark v. Commonwealth*, 30 Va. App. 406, 409-10 (1999)). In doing so, the Court "discard[s] all evidence of the accused that conflicts with that of the Commonwealth and regard[s] as true all credible evidence favorable to the Commonwealth and all fair inferences reasonably deducible therefrom." *Henry v. Commonwealth*, 63 Va. App. 30, 37 (2014) (quoting *Holcomb v. Commonwealth*, 58 Va. App. 339, 346 (2011)). "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v.*

*Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)). Thus, "we must affirm the conviction unless the trial court was plainly wrong or the conviction lacked evidence to support it." *Parham*, 64 Va. App. at 565.

Code § 18.2-308.2:2(K) prohibits any person seeking to purchase a firearm from "willfully and intentionally making a materially false statement on the consent form . . . or on such firearm transaction records as may be required by federal law . . . ." Code § 18.2-308.2:2(K).[3] "In a criminal statute, 'willfully' ordinarily means designedly, intentionally or perversely." *Lambert v. Commonwealth*, 6 Va. App. 360, 363 (1988). "[The] correct application [of willfully] in a particular case will generally depend upon the character of the act involved and the attending circumstances." *Chavez*, 69 Va. App. at 162 (alterations in original) (quoting *Hunter v. Commonwealth*, 15 Va. App. 717, 722 (1993)). "'Intentional' is defined as: 'Determination to act in a certain way or to do a certain thing,'" and the "adverb 'intentionally' is defined as: '[t]o do something purposely and not accidentally.'" *Smith v. Commonwealth*, 282 Va. 449, 454 (2011) (quoting *Black's Law Dictionary* 810 (6th ed. 1990)). The plain language of the statute reflects the General Assembly's intent "to impose upon the Commonwealth a very strict standard of *scienter* in prosecutions for violations of Code § 18.2-308.2:2(K)." *Id.* at 455. That is, the Commonwealth is required to prove "that the defendant had actual knowledge that his statement was false when he made it." *Id.* "There must be evidence to support a finding that he knew the truth but nevertheless intended to, and did, utter a falsehood." *Id.*

Here, the evidence proved that Carter was convicted of domestic assault and battery on April 15, 2015, and again on February 28, 2018. He does not dispute that he had actual knowledge of his prior convictions. In fact, he clearly remembered those convictions, because he relayed the

---

[3] Subsection K was not affected by the 2023 amendments to Code § 18.2-308.2:2. *See* 2023 Va. Acts ch. 464 (H.B. 2467).

facts and circumstances surrounding each of those incidents to Trooper Aldrich during their meeting in May 2021. He also initially marked the "yes" box on Form 4473 when he tried to purchase the firearm. He then changed his answer to "no" after learning that his prior convictions precluded the purchase. Indeed, Ball testified that if a customer answered "yes" to question 11.i on Form 4473, he informed the customer that the sale would not go through and inquired if the customer was sure he was convicted. Ball followed the same procedure for every sale. If the customer wanted to change his answer to "no," Ball instructed him to date and initial his change and write the new answer next to the "no" box. Carter's Form 4473 reflected exactly those changes to the form and reinforced Ball's testimony that he adhered to his usual procedure. A rational fact finder could, therefore, infer from Ball's testimony that Carter purposely changed his answer from "yes" to "no," after learning that Ball would not be able to complete the sale. Because he intentionally answered "no" to a question to which he knew the answer was "yes," he violated Code § 18.2-308.2:2.

Carter maintains that the pertinent question on appeal is not whether he knew he had prior domestic assault convictions, but whether he knew the convictions would disqualify him from purchasing a firearm. We disagree with that contention. The very purpose of Form 4473, as stated in the warning at the top of page 1, was expressly "*to determine* whether [Carter was] prohibited from receiving a firearm." (Emphasis added). Had Carter answered the question truthfully (as he initially did), he would have been made aware that he was disqualified from the purchase (as Ball said he was). The pertinent query on appeal then is whether he knowingly and intentionally falsely answered "no" on Form 4473 to effectuate the unlawful purchase of a firearm. Carter asserts that it is just as likely he became confused about "his status" after Ball inquired if he was sure he had been convicted of the offenses and allowed him to change his answer, so he "relied on the advice and counsel of a man with 30 years in business of selling firearms." However, the jury rejected that theory and we cannot say that its finding was plainly wrong. In fact, Carter signed Form 4473 after

- 6 -

changing his answer to 11.i, certifying that his answers were *true and correct*, that he had *read the instructions and definitions*, and that he understood that if his answer to 11.i was "yes," he was not eligible to purchase a firearm.  And yet, he falsely answered "no" to question 11.i.

From that certification, a rational fact finder could conclude that Carter was aware when he signed Form 4473 that he was prohibited from making the purchase and, thus, that he deliberately, purposely, and falsely answered "no" to question 11.i to effectuate the sale.  "The appellant's actual knowledge and intent are factual determinations to be decided by the trier of fact."  *Parham*, 64 Va. App. at 566.  Moreover, we note that Carter did not tell Trooper Aldrich he became confused while speaking to Ball.  His claim was that he presented his application for the firearm, then learned from his wife that his convictions were a disqualifier, then returned to B&B Pawn to inquire about it and was told for the first time that his convictions prohibited the sale of the gun.  The jury permissibly rejected Carter's claims of innocence and his version of events.  "The sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder."  *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017) (citing *Commonwealth v. McNeal*, 282 Va. 16, 22 (2011)).  Moreover, "[i]n its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt."  *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)).

In sum, we cannot find that the jury was plainly wrong in finding Carter knowingly and intentionally made a false statement on the firearms transaction record.  The facts viewed in their totality, together with all reasonable inferences drawn therefrom, sufficiently proved that Carter knowingly and intentionally answered "no" to question 11.i on Form 4473 having "actual

knowledge that his statement was false when he made it." *Smith*, 282 Va. at 455.  Thus, we affirm the guilty verdict.

CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

*Affirmed*.