COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Annunziata and Overton
Argued at Richmond, Virginia


MARCUS GANZIE
                                        OPINION BY
v.  Record No. 2768-95-2         JUDGE JAMES W. BENTON, JR.
                                       MARCH 25, 1997
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF HENRICO COUNTY
                Joseph F. Spinella, Judge Designate

         Andrea C. Long (David E. Boone; Boone, Beale,
         Carpenter & Cosby, on brief), for appellant.

         Daniel J. Munroe, Assistant Attorney General
         (James S. Gilmore, III, Attorney General, on
         brief), for appellee.


     Marcus Ganzie was indicted and tried on five counts of

perjury.  See Code § 18.2-434.  Ganzie argues (1) that the trial

judge erred in refusing to merge the charges into one count and

(2) that the convictions should be reversed because the

statements he made were not material to the proceedings in which

he testified.  We affirm the convictions.

                                I.

     At his perjury trial, Ganzie's trial counsel stipulated that

on May 2, 1995, Ganzie and his prior attorney had a conference at

the Commonwealth's Attorney's office with Henrico County

Detective James Dorton and two prosecutors.  At that meeting,

Ganzie made statements concerning murders for which Paul Peyton

was charged.  Trial counsel also stipulated that the next day one

of the prosecutors prepared a memorandum describing the

information Ganzie disclosed in the conference.  Trial counsel also stipulated that the prosecutors, the detective, and Ganzie's prior counsel, if called as witnesses, would "authenticate what occurred in the office and what was said by . . . Ganzie on May 2, 1995."

The memorandum, consisting of five paragraphs of text on two pages, was offered as a trial exhibit as part of the stipulation.  As pertinent to the three perjury convictions, the memorandum recites as follows:

> On May 2, 1995, Marcus Ganzie met with myself, Wade Kizer, Jim Dorton, and his attorney, Chris Collins.  Ganzie agreed to cooperate and testify in the case of Commonwealth v. Paul Peyton.

> Ganzie stated that on the day of the murders, he was with Peyton, Jamaar Jefferson and Jermaine Wimbley at Jermaine Wimbley's house.  He said that throughout the day Paul Peyton had been beeping Terry Smith in an effort to get marijuana from Terry Smith.  On one occasion, Smith returned the call and said that he was on his way to give marijuana to Paul Peyton.  Smith never showed, and Paul Peyton was upset.  Paul Peyton said he felt like killing him.  Later in the day they began to discuss sticking Terry Smith up and robbing him of money.  Paul Peyton then began to beep Terry Smith again in the evening.  At some point in the evening, Paul Peyton received a .357 from an individual who lived in Fair Oaks by the name of Jemal.  Paul Peyton left Jermain[e]'s house and went to his house where he got bullets to use in the .357.

> \* \* \* \* \* \* \*

> Paul Peyton and Marcus Ganzie were picked up by Terry Smith and Angela Breeden at Fair Oaks. . . .  As they were driving down North Washington Street, Paul Peyton shot Terry

- 2 -

Smith in the back of the head. At the time that Paul Peyton shot Smith, Marcus Ganzie had his hands on the shoulders of Angela Breeden. Paul Peyton then turned and shot Angela Breeden in the head, and the car ran off of the road into the ditch. . . . As Paul Peyton was trying to get in the trunk after having shot both victims, they heard Angela Breeden moan. Paul Peyton then walked around, shot Angela Breeden again in the head and then went to the other side of the car and shot Terry Smith again in the head.

Ganzie's trial counsel also stipulated that Peyton was tried and convicted of capital murder and that Ganzie testified in the sentencing phase of Peyton's trial. The transcript of Ganzie's testimony, a stipulated exhibit, discloses that Ganzie testified on direct examination as a witness for Peyton. Ganzie testified that he met with the police and Commonwealth's attorneys on two or three occasions and that when they sought to have him testify against Peyton, he told them that Peyton did not commit the killings. Ganzie further testified that Jefferson told him that Jefferson and Jamal Flagg were planning to rob the victims when Flagg shot the victims. Ganzie testified that he went to the scene of the murders with Jefferson after the killings because Jefferson wanted to check the pockets of the victims.

The transcript shows that on cross-examination by the Commonwealth's attorney at Peyton's trial, Ganzie admitted that he was present at the meeting on May 2, 1995 in the Commonwealth's Attorney's office. The Commonwealth's attorney then read from the memorandum and asked Ganzie if he made the statements attributed to him in the memorandum. Ganzie generally

denied making the statements or responded, "I don't remember."

As germane to this appeal, Ganzie testified as follows on cross-examination:

Q  Isn't it true, Mr. Ganzie, that in my office and in front of your attorney, you stated that on the day of the murders you were with Peyton, Jamar Jefferson, and Jermaine Wimberly at Jermaine Wimberly's house.  Didn't you state that?

A  I didn't know if I did.

Q  Didn't you state that in my office?

A  I don't - you must have told me some big words or something.

          *     *     *     *     *     *     *

Q  Did you say that at some point that evening?  Paul Peyton received a 357 Magnum from an individual who lived in Fair Oaks, by the name of Jamal?

A  No.

          *     *     *     *     *     *     *

Q  Didn't you say that as you were driving down N. Washington Street, Paul Peyton shot Terry Smith in the back of the head?

A  No, sir.

          *     *     *     *     *     *     *

Q  And didn't you say that Paul Peyton then turned and shot Angela Breeden in the head, and the car ran off the road into the ditch?

A  No.

          *     *     *     *     *     *     *

Q  All right.  And do you deny saying that as Peyton was trying to get in the trunk, after having shot both victims, that you heard Angela Breeden moan?  Do you deny that?

A  Yes.

Q  And then Paul Peyton, you told us, walked
around and shot Angela Breeden again in the
head and then went to the other side of the
car and shot Terry Smith in the head.  Do you
deny telling us that?

A  Yes.

After presenting the stipulations and the exhibits, including the transcript of the above testimony, the Commonwealth rested its case-in-chief.

When the trial judge denied Ganzie's motion to strike the evidence on the perjury charges, Ganzie's trial counsel called as witnesses the Commonwealth's attorney and the detective who were present at the May 2, 1995 conference with Ganzie and his prior counsel.  The Commonwealth's attorney testified that the memorandum was prepared after the conference and that Ganzie made no statements during the conference that contradicted the statements attributed to Ganzie in the memorandum.  In addition, the detective testified that the memorandum "reflect[s] the sum and substance of what . . . Ganzie . . . told [them] . . . about the two homicides."

The trial judge convicted Ganzie of perjury on three of the five counts charged in the indictments.

## II.

On this appeal, Ganzie does not deny that he made the statements that were attributed to him in the memorandum of May 2, 1995.  He also does not argue that his responses under oath upon cross-examination at Peyton's trial were the literal truth

because the questions were asked in the phraseology of the memorandum, which was a paraphrase of his words and not the precise words that he used on May 2, 1995. See Bronston v. United States, 409 U.S. 352, 360 (1973) (stating that a perjury conviction will not be upheld "so long as the witness speaks the literal truth [because] [t]he burden is on the questioner to pin the witness down to the specific object of the questioner's inquiry"). Instead, he argues that the three counts of perjury should have been merged into a single count because his denials during cross-examination at Peyton's trial constituted only a single denial of the content of the memorandum as a whole.

The Commonwealth argues that the evidence proved Ganzie committed perjury when he responded to each question. Specifically, the Commonwealth contends that Ganzie committed perjury at Peyton's trial when he "denied telling authorities that at some point during the evening of the murders, Peyton received a .357 magnum from Jamal Flagg . . . [,] denied telling authorities that as he was driving down North Washington Street . . . Peyton shot Terry Smith and Angela Breeden . . . [, and] denied telling authorities that, after having shot both victims, Angela Breeden began to moan, and Peyton shot her and Terry Smith in the head once again."

### III.

The perjury statute under which Ganzie was convicted provides as follows:

> If any person to whom an oath is lawfully

administered on any occasion willfully swear falsely on such occasion touching any material matter or thing, . . . he shall be guilty of perjury, punishable as a Class 5 felony.

Code § 18.2-434. The Commonwealth bears the burden of proving the elements of the offense beyond a reasonable doubt. See Holz v. Commonwealth, 220 Va. 876, 880, 263 S.E.2d 426, 428 (1980).

Ganzie asserts that because he made all of the alleged perjurious statements on one "occasion," during his testimony at the penalty phase of Peyton's trial, he committed only one perjury offense. We disagree. The phrase "on any occasion" was inserted into the statute to extend the scope of the statute to cover sworn statements not given in judicial proceedings. See Scott v. Commonwealth, 14 Va. App. 294, 297-98, 416 S.E.2d 47, 49 (1992).

We find nothing in the language of the statute that supports Ganzie's theory that all intentionally false statements given under oath on the same occasion must be combined into and treated as one violation. The plain meaning of the statute is that if a declarant under oath makes a false assertion about any material fact, the declarant can be prosecuted for perjury for that false assertion. Each separate "material matter or thing" in the sworn testimony that is falsely stated gives rise to a separate violation. Thus, multiple acts of perjury may occur on one "occasion."

The evidence proved that the Commonwealth's attorney, who

was present during the conference, prepared an "inter-office memorandum" detailing Ganzie's statements.  Although the memorandum does not purport to contain precise quotations of Ganzie's statements, Ganzie's counsel stipulated that all of the persons present when Ganzie made his statement "would authenticate what occurred in the office and what was said by . . . Ganzie on May 2, 1995."  Indeed, the Commonwealth's attorney and a detective testified at the perjury trial that Ganzie reported the facts recited in the memorandum.

Thus, the evidence proved beyond a reasonable doubt that Ganzie lied at Peyton's trial when he denied (1) having told the police that he and Peyton were driving down North Washington Street when Peyton first shot the victims, (2) having told the police that after Peyton shot the victims, Peyton heard one of the victims moan and shot both of the victims a second time, and (3) having told the police that Peyton obtained the gun from Flagg.  Each false statement constituted a separate offense.  Therefore, upon this evidence Ganzie was properly convicted of three charges of perjury.

IV.

Ganzie argues that the trial judge erred in finding that the statements were material to the issues in the proceeding in which Ganzie made the statements.  We disagree.

"Testimony is material if it is relevant to a main or collateral issue on trial."  <u>Sheard v. Commonwealth</u>, 12 Va. App.

227, 232, 403 S.E.2d 178, 180 (1991).  At Peyton's trial,
Peyton's attorney called Ganzie as a witness in the penalty
phase.  The issue before the jury at the penalty phase was
whether to impose life imprisonment or the death penalty.  See
Payne v. Commonwealth, 233 Va. 460, 470, 357 S.E.2d 500, 506
(1987).  Ganzie testified that Flagg and Jefferson committed the
murders.  His testimony, if believed, had the tendency to cause
the jurors to doubt their verdict finding Peyton guilty of the
murders and might have influenced their recommended sentence.
Moreover, Ganzie's denial of his prior statements was relevant
because the jury, in weighing mitigating evidence, had to decide
whether Ganzie was credible.  See Sheard, 12 Va. App. at 232, 403
S.E.2d at 181.  Because the statements were relevant to the
issues at the sentencing proceedings, see Holz, 220 Va. at 881,
263 S.E.2d at 429, we hold that the statements were material to
the issues on trial.

                                              Affirmed.