COURT OF APPEALS OF VIRGINIA

Present: Judges Decker, Russell and AtLee
Argued at Richmond, Virginia

CANDICE COSSITT-MANICA, S/K/A
  CANDACE COSSITT-MANICA

v.      Record No. 1746-14-2

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE MARLA GRAFF DECKER
NOVEMBER 17, 2015

FROM THE CIRCUIT COURT OF POWHATAN COUNTY
Paul W. Cella, Judge

Andrew D. Meyer for appellant.

Kathleen B. Martin, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Candice Cossitt-Manica appeals her conviction for perjury in violation of Code § 18.2-434.

She contends that the evidence is insufficient to support the conviction. She also argues that the

refusal of her proffered jury instruction defining the elements of the offense was error. We hold that

the record before us contains insufficient evidence to provide the strong independent corroboration

required to support a conviction for perjury. Therefore, we reverse the appellant's conviction and

dismiss the indictment. In light of this holding, the Court does not reach the appellant's claim that

the refusal of her proposed instruction was error.

I. BACKGROUND

*A. David Gray's Burglary and Perjury Convictions*

In 2013, David Gray was tried in Powhatan County for two burglaries alleged to have

occurred between September 15 and 17 of 2012. Gray was connected to those crimes by a pair of

his tennis shoes. Gray asserted an alibi defense that included a temporary lack of access to those

shoes. He was acquitted based in part on testimony provided by the appellant and a second witness, David Sheets. Subsequently, Gray was linked to similar burglary offenses in neighboring Cumberland County during the same period of time, and he entered guilty pleas to those charges. Gray was then charged with perjury in Powhatan County based on his testimony at his 2013 Powhatan burglary trial. He entered guilty pleas to one count of perjury and two counts of inducing another to commit perjury. As a result of Gray's guilty pleas in Powhatan, the Commonwealth charged the appellant with having committed perjury at Gray's 2013 burglary trial.

*B. The Appellant's Perjury Trial*

1. The Commonwealth's Case

The Commonwealth's theory of the case against the appellant at her trial was that she knowingly testified falsely at Gray's burglary trial about two different events that had been key to Gray's alibi defense. According to the prosecutor, Gray's alibi had been that he fought in a mixed martial arts (MMA) event on September 15, 2012. The prosecutor said that Gray claimed to have been injured in the fight and incapacitated for about a week afterward, allegedly preventing him from having committed the Powhatan burglaries between September 15 and 17. The prosecutor represented that Gray also offered an explanation concerning his tennis shoes, which the prosecutor said had been conclusively linked to one of the Powhatan burglaries by a footprint found on the premises. The prosecutor indicated that Gray had presented evidence that his tennis shoes were in the possession of someone else during that period of time, a person who had a history of breaking and entering.[1]

The prosecutor argued that the appellant lied under oath about seeing Gray fight on September 15, 2012. He also contended that the appellant testified falsely about driving Gray on September 20, 2012, to pick up the tennis shoes linked to the burglaries.

---

[1] Not all of the prosecutor's representations were supported by evidence introduced at the appellant's trial. They are set out here merely to provide context for understanding the appeal.

*a. Gray's Testimony and Related Convictions*

At the appellant's perjury trial, Gray testified about his false alibi defense and the involvement of the appellant, who is the mother of Gray's friend. Gray indicated that at his 2013 burglary trial, he had testified that he was injured in an MMA fight at the Hat Factory in Richmond on September 15, 2012. Gray further related that his prior testimony that he was at the Hat Factory that night had been false. He said that he had fought there on two earlier dates, June 29 and August 24, 2012. Gray asserted that shortly after the August fight and prior to September 15, the appellant drove him to his cousin's home to pick up some clothes and shoes. Gray admitted that the shoes linked him to the Powhatan and Cumberland burglaries. He further admitted that he was wearing those shoes over the period of September 15 to 17, 2012, when those burglaries occurred.

Gray also testified about the appellant's involvement in his burglary trial. He stated that in preparation for his trial in October 2013, he contacted the appellant. Gray said that he "suggested" the date of September 15, 2012, to her and "had her believe" that this date, rather than August 24, 2012, was the date of his last MMA fight. He asserted that he did not suggest to the appellant the sequence of events to which she testified. Rather, he explained that "[i]t was events that did happen" but that the events occurred several weeks before the mid-September crimes. According to Gray, the appellant indicated that she "couldn't remember the exact dates." He agreed that the appellant "was taking [his] word for [when the events happened]." Gray admitted that he "manipulated" the appellant to provide false testimony about when the events occurred.

The Commonwealth introduced into evidence at the appellant's trial the orders showing Gray's convictions for burglary and related offenses committed in Cumberland County on September 16 to 17, 2012. It also introduced his convictions for perjury and inducing another to commit perjury committed in Powhatan County on October 30, 2013. All of Gray's Cumberland and Powhatan convictions were based on his guilty pleas. The Commonwealth additionally

introduced the written agreement memorializing the Cumberland guilty pleas into evidence. None of these exhibits contains any information about the factual basis for the Powhatan or Cumberland convictions other than the dates on which they occurred.

### b. *Partial Transcript of the Appellant's Testimony from Gray's Trial*

Additionally, at the appellant's trial, the Commonwealth introduced an excerpt of her testimony from Gray's 2013 burglary trial. The trial court excluded the remainder of the transcript from Gray's trial, including all of the testimony of Gray and Sheets.

The excerpt shows that the appellant engaged in the following exchange on direct examination by Gray's attorney:

Q      I turn your attention back to September of [2012]. Do you recall David [Gray] going to a[n] MMA fight?

A      Yes, I do.

Q      Did you go to that fight?

A      Yes, I did.

Q      Can you tell the Court when that was?

A      It was September 15th.

Q      Had you seen him fight before?

A      Yes, I have.

Q      In fact, [Gray] got you involved in MMA fighting, didn't he?

A      Yes, he did. . . .

Nowhere in the excerpted portion of the transcript was the appellant asked whether Gray fought on September 15 or was injured on that date or any other date.

The excerpt shows that the appellant testified further at Gray's burglary trial that on September 20, at Gray's request, she picked him up from one location, took him to a second location to pick up some clothes, and then dropped him off at a third location. The appellant

- 4 -

identified a pair of shoes shown to her at Gray's burglary trial as shoes she saw protruding from the bag that Gray picked up that day. The appellant was not asked whether she consulted a calendar or spoke to Gray to jog her memory about the date. The appellant gave no testimony concerning the whereabouts of Gray or his tennis shoes between September 15 and 20.

### 2. Other Evidence

The parties stipulated that Brittany Wright, a promoter of fights at the Hat Factory, if called as a witness, would have testified that MMA fighting took place there from 7:00 to 10:00 p.m. on September 15, 2012, but that Gray did not fight in the event. The stipulation did not address whether Gray attended as a spectator. The appellant's only additional evidence was a flyer confirming that an MMA event was held at the Hat Factory from 7:00 to 10:00 p.m. that night.

### 3. Sufficiency Ruling, Jury Verdict and Sentencing

The trial court denied the appellant's motions to strike. It observed in part that "this might not be the strongest corroboration in the world," but it held that the stipulated testimony of Wright coupled with Gray's convictions from Cumberland County were sufficient to support its ruling.

The jury found the appellant guilty of perjury. It recommended a sentence of six months and a fine of $1,250. The court imposed the recommended sentence.

### II. ANALYSIS

The appellant contends that the evidence is insufficient to support her perjury conviction. In assessing the sufficiency of the evidence, we view that evidence in the light most favorable to the Commonwealth, the prevailing party below. Fritter v. Commonwealth, 45 Va. App. 345, 351, 610 S.E.2d 887, 890 (2005).

A conviction for perjury requires proof of three things: that the defendant made a false statement under oath; that she did so willfully; and that the statement was "touching any material matter or thing." Code § 18.2-434. "While the Code has never expressly required corroboration to

sustain a perjury conviction, from an early date, our courts have imposed [such] a . . . requirement." Keffer v. Commonwealth, 12 Va. App. 545, 547, 404 S.E.2d 745, 746 (1991) (citing Schwartz v. Commonwealth, 68 Va. (27 Gratt.) 1025 (1876)). "[W]hen there is witness against witness, oath against oath, there must be other evidence to satisfy the mind." Id. at 548, 404 S.E.2d at 747 (quoting Schwartz, 68 Va. (27 Gratt.) at 1032). Proving perjury with opposing testimony, therefore, requires either "two witnesses testifying to the falsity of the statement" or "one witness with strong corroborating circumstances." Id. at 548, 404 S.E.2d at 746 (quoting Schwartz, 68 Va. (27 Gratt.) at 1027); see also Donati v. Commonwealth, 37 Va. App. 575, 578-79, 560 S.E.2d 455, 456-57 (2002) (holding that no evidence is required to corroborate "competent, authenticated, real evidence," such as a video recording). Additionally, a perjury conviction "will not be upheld 'so long as the witness speaks the literal truth [because] the burden is on the questioner to pin the witness down to the specific object of the questioner's inquiry.'" Ganzie v. Commonwealth, 24 Va. App. 422, 427, 482 S.E.2d 863, 866 (1997) (alteration in original) (quoting Bronston v. United States, 409 U.S. 352, 360 (1973) (interpreting a similar federal perjury statute)).

The appellant contends that her testimony at Gray's Powhatan burglary trial established only that Gray attended the MMA event on September 15, not that he fought in it. She further argues that the evidence at her trial was insufficient to corroborate Gray's testimony that he did not attend the September 15 event and that she did not drive him to pick up his shoes on September 20.

*A. Testimony Relied Upon to Show Perjury*

Gray testified that he did not fight in the MMA event on September 15. Additionally, by means of the parties' joint stipulation, fight promoter Brittany Wright confirmed that Gray did not fight in the September 15 event. Consequently, if the appellant's testimony may fairly be characterized as indicating that Gray *fought* on September 15, perjury was adequately proved and corroborated by two witnesses—Gray and Wright.

In analyzing this issue, we look to the wording of the appellant's relevant answers at Gray's trial because a perjury conviction "will not be upheld '[if] the witness speaks the literal truth.'" Ganzie, 24 Va. App. at 427, 482 S.E.2d at 866 (quoting Bronston, 409 U.S. at 356, 360 (looking solely to the alleged perjurer's answers despite a potential lack of clarity in the questions)). An answer that is true, even if it is arguably evasive or incomplete, does not constitute perjury. See Bronston, 409 U.S. at 356-60 ("Sometimes the witness does not understand the question . . . . [Even] [i]f a witness evades, it is the lawyer's responsibility to recognize the evasion and . . . flush out the whole truth with the tools of adversary examination.").

The relevant transcript excerpt, after referencing the September 15 fights, reflects that Gray's attorney asked the appellant, "Had you seen him fight before?" The appellant replied, "Yes, I *have* [seen him fight before]." (Emphasis added). Nothing in the record establishes that the appellant's answer to the question regarding whether she had "seen him fight before" was false. Gray testified at the appellant's perjury trial that he fought in MMA fights on June 29 and August 24, 2012. Nothing indicates that the appellant did not attend either of those fights. In addition, the appellant testified that Gray had gotten her involved in MMA fighting, supporting the inference that she could have seen him engage in MMA fighting on earlier dates. The record, therefore, fails to prove that the appellant's answer was not "literal[ly] tru[e]" when she testified at Gray's 2013 burglary trial, "Yes, I have [seen Gray fight before]." See id. at 360. Accordingly, the testimony of

Gray and Wright that Gray did not fight on September 15, 2012, does not support the appellant's conviction for perjury. [2]

The evidence, however, proves that the appellant testified that Gray attended the September 15 MMA event and that she drove him to pick up his shoes on September 20. Only Gray testified that he did not attend that event on September 15 or ride with the appellant on September 20. Therefore, the appellant's conviction depends on whether the record adequately corroborates the testimony of Gray, the sole witness, that either: he did not *attend* the MMA event on September 15 or he did not ride with the appellant on September 20 to pick up his tennis shoes. Either statement, if sufficiently corroborated, could support the appellant's conviction for perjury.

*B. Corroboration of Gray's Testimony*

The precise nature of the corroboration necessary to substantiate the testimony of a single witness in a perjury prosecution has never been "specifically delineated" by Virginia's appellate courts. Stewart v. Commonwealth, 22 Va. App. 117, 120, 468 S.E.2d 126, 127 (1996). However,

> [t]he purpose of requiring corroborating evidence is "to confirm the single witness' testimony and to induce the belief of it." . . . [A]lthough the corroborating evidence "must be of a strong character, and not merely corroborative in slight particulars," it need

---

[2] We would reach this conclusion even under the limited interpretation of Bronston applied by several federal appellate courts, including the Fourth Circuit. See, e.g., United States v. Sarwari, 669 F.3d 401, 405-07 (4th Cir. 2012) (narrowly construing Bronston's holding that a "'literally true but not responsive'" answer cannot support a perjury conviction (quoting Bronston, 409 U.S. at 353)). In Sarwari, for example, the Fourth Circuit held that the "literal truth defense" does not apply if the answer at issue is true under only one construction of an ambiguous question. Id. at 407. The key question and answer here were at best ambiguous. Further, the broader context of the appellant's examination does not support a finding that the appellant meant that Gray fought on September 15 rather than merely attended the event. See Fritter, 45 Va. App. at 351-55, 610 S.E.2d at 890-92 (considering a letter in a perjury trial based on reasonable inferences from its contents). Consequently, the evidence in the written transcript of the appellant's testimony did not permit the jury to find beyond a reasonable doubt that the appellant's answer indicated that Gray fought on September 15. See Haskins v. Commonwealth, 44 Va. App. 1, 9, 602 S.E.2d 402, 406 (2004); see also United States v. Flowers, 813 F.2d 1320, 1324 (4th Cir. 1987) (reversing a conviction after comparing two transcripts of the defendant's testimony because, viewed in the light most favorable to the government, they did not prove perjury).

not be equal in weight to the testimony of a second witness. Rather [it] must confirm the single witness' testimony in a manner strong enough "to turn the scale and overcome the oath of the [defendant] and the legal presumption of his innocence."

Id. (first quoting 7 John H. Wigmore, Evidence § 2042, at 364 (Chadbourn rev. ed. 1978); then quoting Schwartz, 68 Va. (27 Gratt.) at 1027; and then quoting Keffer, 12 Va. App. at 548, 404 S.E.2d at 746-47). In order to achieve this purpose, corroborative evidence must be "evidence that does not emanate from the [single witness'] mouth, does not rest wholly upon the [single witness'] credibility, but . . . adds to, strengthens, and confirms [that witness'] testimony." Massey v. Commonwealth, 230 Va. 436, 443, 337 S.E.2d 754, 758 (1985) (analogizing to the requirement of corroboration for the offense of seduction under promise of marriage); see Robinson v. Commonwealth, 186 Va. 992, 994-95, 45 S.E.2d 162, 162-63 (1947) (equating the corroboration required in "cases of seduction and perjury"). Based on these standards, Gray's convictions in Powhatan and Cumberland were neither sufficiently independent from, nor sufficiently corroborative of, Gray's testimony at the appellant's perjury trial.

Regarding the independence of the evidence, these convictions were based solely on Gray's guilty pleas. No transcript of either plea colloquy was admitted into evidence. The Commonwealth's argument that Gray had no incentive to plead guilty to inducing the appellant to commit perjury if he did not in fact do so, while logical on its face, is nevertheless insufficiently independent of Gray's oath at the appellant's perjury trial to provide the strong corroborating evidence necessary to support a conviction. Gray's judicial confession in one proceeding cannot corroborate his testimony in a different judicial proceeding. See generally Schwartz, 68 Va. (27 Gratt.) at 1030 (noting that a full judicial confession is substantially the same thing as a guilty plea to an indictment). Accordingly, on these facts, Gray's Powhatan and Cumberland convictions were based on his oaths and were not sufficiently independent of his oath at the appellant's perjury trial to meet the required standard.

Additionally, even if the convictions were sufficiently independent, they did not adequately corroborate the portions of Gray's testimony that contradicted the appellant's testimony at Gray's 2013 burglary trial. Regarding Gray's convictions for perjury and inducing another to commit perjury, the evidence establishes only that the offense dates were the date of Gray's burglary trial. The record does not contain a written plea agreement or transcript of the colloquy. Nor does the sentencing order describe the details of the offenses. Therefore, no evidence apart from Gray's testimony at the appellant's trial establishes that either of Gray's convictions for inducing another to commit perjury was based on the specific testimony that the appellant gave at Gray's burglary trial.

Gray's Cumberland convictions were similarly insufficient to provide the necessary corroboration to prove the appellant committed perjury. Gray's commission of the offenses in Cumberland on September 16 to 17, 2012, to which he was linked by a tennis shoe print, corroborates his testimony that he was wearing the tennis shoes during the period of September 15 to 17, when the Powhatan burglaries occurred and during which a similar shoe print was found. Additionally, his commission of the Cumberland offenses corroborates his testimony that he was not injured in an MMA fight on September 15 to such an extent that he was physically incapable of committing the Powhatan burglaries between September 15 and 17. However, this testimony does not relate directly to the two discrete pieces of the appellant's testimony upon which her perjury conviction was based—her testimony that she and Gray attended the MMA fights on September 15 and that she drove him to pick up his tennis shoes on September 20.

Regarding the September 15 MMA fights and their aftermath, the appellant's testimony was very limited. Gray indicated that he had testified falsely in his Powhatan burglary trial that he had fought in the September 15 MMA event and been injured. The appellant, however, gave no testimony that Gray fought or was injured on September 15. Further, she made no representations concerning the incapacity Gray claimed to have suffered afterward. She testified only that she and

- 10 -

Gray attended the September 15 MMA fights. Gray's conviction for committing the Cumberland burglaries on September 16 to 17, therefore, does not provide strong corroboration for his claim that he did not attend the event on September 15, the only point about which the appellant testified.

Regarding the tennis shoes, Gray admitted that the shoes were in his possession from September 15 to 17, 2012, belying his claim in his burglary trial that the shoes had been in someone else's possession during that period of time. The appellant, however, gave no testimony concerning the whereabouts of Gray's tennis shoes on any date other than September 20. Similarly, therefore, Gray's conviction for committing the Cumberland burglaries on September 16 to 17, during which he was wearing the tennis shoes, does not adequately corroborate Gray's testimony that the appellant did not drive him to pick up those shoes three days later, on September 20.

Based on the record before this Court, the scope of the appellant's testimony at Gray's burglary trial supported his false alibi merely by inference. Thus, even assuming that Gray's Powhatan and Cumberland convictions were sufficiently independent of his testimony at the appellant's perjury trial, the convictions do not provide the strong corroboration necessary to prove that the appellant committed perjury. Accordingly, the evidence in the record is insufficient, as a matter of law, to support the appellant's perjury conviction. In light of our holding that the appellant's conviction must be reversed, we do not reach the appellant's claim that some of her challenged testimony did not meet the materiality requirement necessary to prove perjury.

## III. CONCLUSION

We hold that the record before us contains insufficient evidence to provide the strong independent corroboration required to support the appellant's conviction for perjury. Therefore, we reverse the appellant's conviction and dismiss the indictment without reaching her second assignment of error claiming that the trial court erroneously refused her jury instruction.

Reversed and dismissed.