COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Huff, Judges Decker and AtLee
Argued by teleconference


BRANDON DOMINIC WINDER

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1813-16-1                      JUDGE RICHARD Y. ATLEE, JR.
                                                    FEBRUARY 6, 2018

COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                            Jerrauld C. Jones, Judge

              Andrew R. Sebok for appellant.

              Victoria Johnson, Assistant Attorney General (Mark R. Herring,
              Attorney General, on brief), for appellee.


       Appellant Brandon Dominic Winder appeals two perjury convictions, assigning the

following errors:

              I[.]    The trial court erred in denying [Winder]'s motion to
                      dismiss wherein [Winder] moved to dismiss the
                      indictments based upon collateral estoppel.

              II.     The trial court erred in denying [Winder]'s motion to strike
                      arguing that the evidence adduced at trial was not sufficient
                      to prove beyond a reasonable doubt that [Winder] had
                      violated [Code] Section 18.2-434[.]

              III[.]  This Honorable Court should apply Rule 5A:18's ends of
                      justice exception if it finds that defense counsel below
                      failed to properly preserve an error assigned in this brief[.]

(Capitalization and formatting altered) (citations omitted).  We affirm.

_____

       * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I. Background

"Applying familiar principles of appellate review, we will state the facts in the light most favorable to the Commonwealth, the prevailing party at trial." Williams v. Commonwealth, 278 Va. 190, 191, 677 S.E.2d 280, 281 (2009). On February 6, 2013, Winder failed to appear in the Circuit Court of the City of Norfolk as previously required. Subsequently, Winder gave sworn testimony on two different occasions in the circuit court regarding his whereabouts on that date.

A. Bond Hearing

At a bond hearing on July 29, 2013, Winder testified that he was at Sentara Leigh Hospital on February 6, 2013 because he "got in an accident." While in the hospital, he received stitches.[1] He explained that he arrived at the hospital at approximately 5:30 a.m. on February 6, 2013 and was discharged early that afternoon. He acknowledged that he knew he had court on February 6, 2013. At the bond hearing, Winder's attorney handed the judge a document purportedly related to Winder's hospital stay. The document was not entered into evidence, however, and Winder's attorney retrieved it from the judge before the end of the hearing. Ultimately, the circuit court denied Winder's motion for bond.

B. Failure to Appear Trial

The Commonwealth subsequently indicted Winder for failing to appear in court, based upon his absence on February 6, 2013.[2] On October 30, 2013, Winder was tried by a judge for

---

[1] On direct examination, he testified that he received stitches in "[his] knee and [his] hand." He testified on cross-examination that he received stitches in "[his] hand and [his] thigh." Under questioning from the judge, Winder offered yet another description of the stitches: "Well, the hand ones I was getting put in, but the other ones I was getting removed."

[2] Although the parties agree that Winder was charged with failure to appear in violation of Code § 19.2-128, it is unclear from the limited record provided whether this charge was a misdemeanor or a felony. The degree of a failure to appear charge is determined by the degree of the charge for which one fails to appear. See Code § 19.2-128(B) and (C). At the bond hearing, Winder's attorney stated that Winder "initially had a bond on the possession of cocaine charge and the trespassing charge and then there was [a failure to appear] in reference to this

the failure to appear.[3]  At that trial, Winder testified that he did not appear in court on February 6, 2013 because the night before, he had been in a car accident after leaving a nightclub.  He described his injuries as "[b]ack pains, cut in [his] thigh."  He testified that he received two stitches, and offered into evidence what he described as "a bill" from Sentara Leigh Hospital.[4]  This document listed his name and address, as well as an "Account Number," which consisted of a nine-digit number followed by a dash and a four-digit number.  It listed the "Admit/Visit Date" and "Discharge Date" as "02/06/2013."

The Commonwealth called Sentara Leigh Hospital's risk manager as a witness.  The risk manager testified that she searched for records of Winder's presence at Sentara Leigh Hospital on February 6, 2013.  Her search yielded no such records.  On cross-examination, the risk manager conceded that the letter Winder introduced contained "one of the . . . logos that Sentara does use" and that the address on the letter appeared to be Sentara's billing department.  The risk manager was not able to testify that the letter offered by Winder was forged.

The circuit court dismissed the failure to appear charge.  It did not offer a detailed explanation for the dismissal, other than instructing Winder's attorney prior to closing argument: "You don't need to argue that . . . . I think there's enough reasonable doubt on that charge."

### C. Perjury Trial

Eventually, the Commonwealth indicted Winder for two counts of perjury, corresponding to his testimony at the bond hearing on July 29, 2013, and at the failure to appear trial on

---

case."  Our inability to determine whether the failure to appear was a felony or a misdemeanor does not affect our ability to resolve this appeal, however, since the logic we employ applies in either circumstance.

[3] Additionally, Winder was tried for possession of cocaine and trespassing.  Those charges are not at issue in this appeal.

[4] The document is a letter.  Although it does contain an account balance, it appears to be a request for further insurance information rather than a bill.

- 3 -

October 30, 2013. Prior to the perjury trial, Winder moved to dismiss the charges on collateral estoppel grounds. The circuit court took the motion under advisement. At the perjury trial, the Commonwealth offered copies of transcripts of the bond hearing and the failure to appear trial, which the circuit court admitted without objection from Winder.

Instead of calling Sentara's risk manager as a witness, the Commonwealth called Sentara's custodian of records. She testified that the account numbers used in connection with patient visits to Sentara hospitals actually comprise two different numbers with distinct meanings. The longer number is specific to each patient, and is never reused for a different patient. Every patient receives such a number, even if they do not receive treatment, and even if they leave the hospital against medical advice. The shorter number is "encounter specific" and corresponds to a date.[5] The custodian of records testified that the "encounter specific" number on the letter Winder introduced did correspond to February 6, 2013. As to the patient number on that letter, although it corresponded to an actual Sentara patient, it was a different patient, not Winder. The custodian of records searched Sentara's records for any records related to Winder. She found that Winder had been to a Sentara Hospital twice. Neither visit was in 2013, and no record showed that Winder had ever been a patient at Sentara Leigh Hospital. Like the risk manager, the custodian of records could not say that the letter Winder offered into evidence was a forgery. She testified that the name at the bottom of the letter was a real employee of Sentara, as far as she knew, and that the substance of the letter, addressing insurance coverage, was not irregular.

The circuit court ultimately denied Winder's motion to dismiss on collateral estoppel grounds, and convicted him of both perjury charges. The circuit court sentenced Winder to four

---

[5] Although it is not clear from the record which date (arrival or departure) is used when a patient's stay spans more than one day, that distinction does not matter for purposes of this case.

years in the penitentiary on each charge, for a total of eight years, and suspended all but six months of each charge. Winder then noted this appeal.

## II. ANALYSIS[6]

### A. Collateral Estoppel

In his first assignment of error, Winder asserts that the circuit court erred in denying his collateral estoppel motion. We review *de novo* the applicability of collateral estoppel, though we remain "bound by the underlying factual issues as determined by the fact finder unless they are plainly wrong or unsupported by the evidence." Commonwealth v. Davis, 290 Va. 362, 368-69, 777 S.E.2d 555, 558 (2015) (quoting Loudoun Hosp. Ctr. v. Stroube, 50 Va. App. 478, 493, 650 S.E.2d 879, 887 (2007)).

"The principle of collateral estoppel 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" Id. (quoting Ashe v. Swenson, 397 U.S. 436, 443 (1970)). "The party seeking the protection of collateral estoppel carries the burden of showing that the verdict in the prior action necessarily decided the precise issue he seeks to now preclude." Rogers v. Commonwealth, 5 Va. App. 337, 341, 362 S.E.2d 752, 754 (1987). In the criminal context, "[c]ollateral estoppel only bars the Commonwealth 'from introducing evidence to prove an offense for which a defendant has been *previously acquitted*.'" Painter v. Commonwealth, 47 Va. App. 225, 236, 623 S.E.2d 408, 413 (2005) (quoting Simon v. Commonwealth, 220 Va. 412, 417, 258 S.E.2d 567, 571 (1979)). But "[a]n acquittal, 'standing alone, does not permit a conclusion with respect' to a court's findings or rationale," Ramadan v. Commonwealth, 28 Va. App. 708, 714, 508 S.E.2d 357, 360 (1998) (quoting Copeland v.

---

[6] Following oral argument in this case, the panel held its decision in abeyance until the Supreme Court's decision in Pijor v. Commonwealth, 294 Va. 502, 808 S.E.2d 408 (2017).

Commonwealth, 13 Va. App. 450, 453, 412 S.E.2d 468, 470 (1991)), because collateral estoppel only applies "when the defendant's prior acquittal necessarily resolved a *factual issue* that the Commonwealth seeks to litigate again in a subsequent proceeding," Commonwealth v. Leonard, 294 Va. 233, 239, 805 S.E.2d 245, 249 (2017).  Thus, collateral estoppel "does not apply if it appears that the prior judgment could have been grounded 'upon an issue other than that which the defendant seeks to foreclose from consideration.'"  Lee v. Commonwealth, 219 Va. 1108, 1111, 254 S.E.2d 126, 127 (1979) (quoting Ashe, 397 U.S. at 444).

> [T]he rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality.  Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter . . . ."

Ashe, 397 U.S. at 444 (quoting Daniel K. Mayers & Fletcher L. Yarbrough, Bis Vexari:  New Trials and Successive Prosecutions, 74 Harv. L. Rev. 1, 38 (1960)).  In Whitley v. Commonwealth, 260 Va. 482, 538 S.E.2d 296 (2000), the Supreme Court listed four requirements for the application of collateral estoppel:

> (1) the parties to the two proceedings must be the same; (2) the factual issue sought to be litigated must have been actually litigated in the prior proceeding; (3) the factual issue must have been essential to the judgment rendered in the prior proceeding; and (4) the prior proceeding must have resulted in a valid, final judgment against the party to whom the doctrine is sought to be applied.

Id. at 489, 538 S.E.2d at 299.

On brief Winder argues that, by dismissing his failure to appear charge, the circuit court "by definition found that Mr. Winder had not lied regarding his whereabouts on February 6, 2013."  We disagree.  "[T]he acquittal of one charged with a crime is no bar to a prosecution for perjury for testimony given by him at the trial, although a conviction would necessarily import a

contradiction of the verdict in the former case." Slayton v. Commonwealth, 185 Va. 371, 382, 38 S.E.2d 485, 491 (1946). Winder's trial for failure to appear required the circuit court to decide whether he "willfully fail[ed] to appear before any court as required." Code § 19.2-128(B) and (C). Fundamentally, Code § 19.2-128 does not require the Commonwealth to prove where someone was, only where someone was not. Willful absence from a required court appearance is the crime. Although a court dismissing a failure to appear charge is free to announce a finding that the defendant was present in a certain location instead of in court, it is not required to make such a finding. Here, the circuit court made no contemporaneous comment explaining why it dismissed Winder's failure to appear charge. It simply said "I think there's enough reasonable doubt on that charge."

Applying the facts of this case to the four conjunctive factors in Whitley, we agree with Winder that he satisfied the first factor. The parties to the failure to appear trial and the perjury trial were the same: Winder and the Commonwealth. As to the fourth factor, the result of Winder's failure to appear trial was a "valid, final judgment" that Winder was not guilty of failure to appear. However, Winder has not satisfied the second and third Whitley factors.

The second factor requires that "the factual issue sought to be litigated must have been actually litigated in the prior proceeding." Whitley, 260 Va. at 489, 538 S.E.2d at 299. Here, "the factual issue sought to be litigated" is the truthfulness of Winder's statement that he was at Sentara Leigh Hospital when he was supposed to be in court. Although Winder's testimony was one part of the evidence the circuit court had before it, and the circuit court was free to consider that evidence in deciding whether to convict or acquit, there is no clear indication from the record that the circuit court used Winder's testimony to arrive at its decision. Nor is there any clear indication from the record that the circuit court found that Winder testified truthfully.

The third factor requires that "the factual issue must have been essential to the judgment rendered in the prior proceeding." Id. The circuit court did not announce the connection, if any, between Winder's testimony and its decision to dismiss the charge. "'Collateral estoppel . . . does not apply if it appears that the prior judgment could have been grounded "upon an issue other than that which the defendant seeks to foreclose from consideration.'"'" Pijor v. Commonwealth, 294 Va. 502, 509, 808 S.E.2d 408, 411-12 (2017) (quoting Lee, 219 Va. at 1111, 254 S.E.2d at 127 (quoting Ashe, 397 U.S. at 444)). The circuit court could have grounded its decision to dismiss the failure to appear charge upon reasons other than the truthfulness of Winder's statement.[7] On the limited evidence before it that was, as yet, untested

---

[7] At the perjury trial, the circuit court declared that in trials for failure to appear, judges have "absolute and total sound discretion to determine whether it will or will not hold a person accountable, for a good reason or for no reason, for failing to appear in court." This was so, the circuit court explained, because Code § 19.2-128 contains language that empowers courts to act "unless one of the parties can show good cause for excusing the absence, or unless the court, in its sound discretion, shall determine that neither the interests of justice nor the power of the court to conduct orderly proceedings will be served by such forfeiture." The Commonwealth also cites this language in its brief as justification for the dismissal of the failure to appear charge. This logic misunderstands Code § 19.2-128.

Code § 19.2-128 is entitled "Penalties for failure to appear," and contains three subsections outlining those penalties. Subsection "B" declares that failure to appear in court for a felony charge constitutes a felony itself. Similarly, subsection "C" declares that failure to appear in court for a misdemeanor charge constitutes a misdemeanor itself. In contrast, subsection "A" does not describe a crime at all; rather, it outlines the procedure for "forfeiture of any security which may have been given or pledged for [a defendant's] release," after he fails to appear. It is in this subsection that we find the language quoted above, giving courts wide discretion. In fact, this discretion relates only to a court's decision to require forfeiture of a defendant's security. Subsection (A) explains that anyone who fails to appear in court as required shall

> incur a forfeiture of any security which may have been given or pledged for his release, unless one of the parties can show good cause for excusing the absence, or unless the court, in its sound discretion, shall determine that neither the interests of justice nor the power of the court to conduct orderly proceedings will be served by such forfeiture.

This language is not contained in either subsection (B) or (C), thus courts do not have such latitude in deciding whether to convict a defendant of the crime of failure to appear.

by the Commonwealth, the circuit court could have found it more likely than not Winder was untruthful regarding his whereabouts, yet harbored reasonable doubt sufficient to warrant an acquittal. Alternatively, it could have disbelieved Winder's explanation of his whereabouts, but found that the Commonwealth nevertheless failed to meet its burden of proof to as to the willfulness element.

"Since it is usually impossible to determine with any precision upon what basis the [fact finder] reached a verdict in a criminal case, it is a rare situation in which the collateral estoppel defense will be available to a defendant." Jones v. Commonwealth, 217 Va. 231, 233, 228 S.E.2d 127, 128-29 (1976) (quoting United States v. Tramunti, 500 F.2d 1334, 1346 (2d Cir. 1974)). Winder's is not one of those rare situations. Accordingly, the doctrine of collateral estoppel did not bar Winder's prosecution for perjury.

## B. Sufficiency of the Evidence

We address Winder's second and third assignments of error together, because they are intertwined. In his second assignment of error, Winder argues that the evidence was insufficient to convict him of perjury. Part of his argument on appeal is that perjury requires the testimony of two corroborating witnesses, and since the Commonwealth did not present two corroborating witnesses, the evidence was insufficient. The balance of his argument in support of his second assignment of error addresses the general insufficiency of the evidence. In his third assignment of error, Winder states that, should this Court find that any error was not adequately preserved in the circuit court, this Court should invoke the ends of justice exception to the preservation requirements of Rule 5A:18 to reach the merits of this this portion of his sufficiency assignment of error. Winder's third assignment of error is not really an assignment of error at all. Instead, it is an additional argument in support of addressing the entirety of his second assignment of error.

We find that, as to the portion of his second assignment of error in which Winder argues that the Commonwealth did not present two corroborating witnesses, Winder failed to preserve this specific issue in the circuit court, in violation of Rule 5A:18. We do not find that the ends of justice require our consideration of the merits of this portion of his assignment of error. We do address the balance of his second assignment of error, contesting the general sufficiency of the evidence, and we find that the evidence was sufficient.

### 1. *Two Witness Corroboration*

Winder contends the Commonwealth failed to introduce sufficient corroborating evidence to sustain his perjury convictions. "While the Code has never expressly required corroboration to sustain a perjury conviction, from an early date, our courts have imposed [such] a . . . requirement." Cossitt-Manica v. Commonwealth, 65 Va. App. 394, 400, 778 S.E.2d 513, 516 (2015) (alterations in original) (quoting Keffer v. Commonwealth, 12 Va. App. 545, 547, 404 S.E.2d 745, 746 (1991)). However, the record demonstrates that Winder did not raise this argument in the circuit court. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Rule 5A:18.

Winder claims that, although he did not raise this issue in the circuit court, this Court should apply the ends of justice exception to Rule 5A:18. "In order to avail oneself of the exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997). "As our Supreme Court has stated, application of the ends of justice exception 'requires a determination not only that there was error . . . but also that application of the exception is necessary to avoid a grave injustice.'" Lacey v. Commonwealth, 54 Va. App.

- 10 -

32, 46, 675 S.E.2d 846, 853 (2009) (alteration in original) (quoting Charles v. Commonwealth, 270 Va. 14, 20, 613 S.E.2d 432, 434 (2005)).  Such occasions arise "only in 'rare instances.'" Id. (quoting Ball v. Commonwealth, 221 Va. 754, 758, 273 S.E.2d 790, 793 (1981)).  We do not find any risk of a grave injustice here, thus this is not one of the rare instances in which we invoke the ends of justice exception to Rule 5A:18.  As such, Rule 5A:18 bars our consideration of the merits of Winder's claim that the evidence of perjury was insufficiently corroborated.

### 2. *General Sufficiency*

Winder also challenges the general sufficiency of the evidence to support his convictions for perjury.  "As the trier of fact, the trial court was charged with determining the credibility of the[] witnesses and the weight of the evidence."  Wetlands Am. Tr., Inc. v. White Cloud Nine Ventures, L.P., 291 Va. 153, 173-74, 782 S.E.2d 131, 143 (2016).  When we, as an appellate court, "consider[] on appeal the sufficiency of the evidence presented below, we 'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'"  Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002)).  Furthermore, "we will consider the evidence in the light most favorable to the Commonwealth, as it prevailed in the trial court."  Whitehurst v. Commonwealth, 63 Va. App. 132, 133, 754 S.E.2d 910, 910 (2014).

Virginia's perjury statute, Code § 18.2-434, states:  "If any person to whom an oath is lawfully administered on any occasion willfully swears falsely on such occasion touching any material matter or thing . . . , he is guilty of perjury, punishable as a Class 5 felony."  There was no question that Winder had testified twice previously that he was at Sentara Leigh Hospital on the date in question.  The issue at trial was the truthfulness of those statements.

At the perjury trial, the circuit court had before it transcripts of Winder's two statements. The circuit court also assessed the testimony of the custodian of the records, who testified at the perjury trial. Finally, the circuit court examined the letter Winder offered into evidence at his trial for failure to appear. As to the letter, the circuit court conceded that "[t]his is not a forgery charge," and it could not say that Winder forged the letter. However, the circuit court stated, "I'm not sure this is genuine. This is a copy, maybe a copy of a copy, and there's this line that goes across here. I'm able to look at this and examine it for what it is . . . ." The circuit court's uncertainty about the validity of the letter stood in contrast to its acceptance of the testimony of Sentara's custodian of records. The circuit court pointed out that "hospitals have a huge incentive to be correct on this because it's all about billing." The circuit court stated: "[T]o me it is clear from the evidence that he was not a patient at Sentara Hospital system, more specifically Sentara Leigh . . . . There's no evidence that that is true . . . ." Viewing the evidence in the light most favorable to the Commonwealth, and deferring to the circuit court's findings as to the weight of the evidence, we do not find that the circuit court's conclusions were plainly wrong or without supporting evidence. As such, we find that the evidence proved beyond a reasonable doubt that Winder perjured himself on the two dates charged.

## III. CONCLUSION

For the foregoing reasons, we hold the circuit court did not err when it found that collateral estoppel did not require dismissal of Winder's perjury charges. We decline to address Winder's argument that the Commonwealth failed to corroborate its allegations of perjury with two witnesses, finding such argument unpreserved, in violation of Rule 5A:18. Finally, as to the balance of Winder's argument that the evidence was insufficient, we disagree, and find the evidence sufficient to support his convictions.

Affirmed.